UNITED STATES of America,
Plaintiff-Appellee,

v.

Elliot LASKY, Defendant-Appellant.

No. 78–3064.

United States Court of Appeals,
Ninth Circuit.

March 6, 1979.

Frank J. Ragen, San Diego, Cal., for defendant-appellant.

Thomas M. Coffin, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before WRIGHT and WALLACE, Circuit Judges, and TEMPLAR,\* Senior District Judge.

EUGENE A. WRIGHT, Circuit Judge:

Lasky was convicted of importation and conspiracy to import cocaine in violation of 21 U.S.C. §§ 953, 960, and 963. He was sentenced to two concurrent seven-year terms with a ten-year special parole term. Following an unsuccessful appeal, *United States v. Lasky*, 548 F.2d 835 (9th Cir. 1977), he moved under Rule 35 of the Federal Rules of Criminal Procedure for reduction of sentence.

The district court denied the motion and Lasky appeals, contending (1) that the sentence was imposed and modification was denied on the basis of incorrect information; (2) that the sentence imposed was so harsh as to constitute an abuse of discretion; and (3) that the court applied a mechanical approach to sentencing, and thereby denied him due process of law. We affirm.

I.

Lasky pleaded guilty in 1967 to possession of LSD and received probation. To allow Lasky to attend law school the sentencing judge granted a motion to terminate probation and expunge the record of conviction.

In the fall of 1970, Lasky entered law school in New York. According to his testimony at trial, he took a leave of absence from January 1971 to January 1972.

The conspiracy charged in the indictment below encompassed a time period from September to December 1971, during the leave of absence. Evidence at trial showed that during that time Lasky supplied part of the financing and a list of cocaine contacts in Colombia. Lasky played no physical part in the purchase and importation of the cocaine and instead employed an agent.

Lasky returned to law school about January 1972, remained there until about May 1972 and he took a second leave of absence from May 1972 to June 1973.

At trial, the Government presented evidence of three other drug transactions involving Lasky. The first occurred in January 1972 at the end of the first leave of absence. The other two were in May and December of 1972 during the second leave of absence. At trial Lasky admitted his involvement in the May 1972 incident, but denied any involvement in the other two transactions.

\* Senior Judge for the District of Kansas.

He returned to law school in the summer of 1973 and finished in 1975. He was indicted in New York for his participation in the May 1972 transaction and pleaded guilty in December 1973. He was sentenced in November 1974 to a period of three years on probation.

Lasky was indicted in the instant case in August 1973 for his participation in the 1971 conspiracy. He was convicted by a jury in July 1975.

## II.

■ Due process is violated whenever a defendant is sentenced on the basis of information that is materially false or unreliable. *Townsend v. Burke*, 334 U.S. 736, 740–41, 71 S.Ct. 286, 95 L.Ed. 661 (1948); *Farrow v. United States*, 580 F.2d 1339, 1359 (9th Cir. 1978); *United States v. Weston*, 448 F.2d 626 (9th Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972).[1]

■ Lasky contends that the sentencing judge improperly relied on an erroneous impression that Lasky had been dealing in cocaine while in law school. This contention is without merit. Under the teaching of *Farrow*, a sentence will be remanded only if the challenged information is (1) false or misleading, and (2) demonstrably made the basis for the sentence. 580 F.2d at 1359.

The information before the sentencing judge was accurate, since the cocaine deals took place between Lasky's entrance and completion of law school. One is not a law student only while physically seated in a classroom. An occasional "leave of absence" to travel to Colombia or California to arrange for a smuggling venture hardly detracts from the district court's belief that the cocaine transactions occurred during Lasky's law school career.[2]

Moreover, the district court did not demonstrably rely on this fact as a basis for sentencing. The judge did comment "for you to do this while you were going to law school boggles my mind." Apparently what bothered the judge, however, was not the fact that Lasky did this while a law student.

Rather, the judge seemed perplexed that one who had been given a special opportunity to straighten out his life and pursue a legal career would undertake to traffic in cocaine. It is no answer to maintain that Lasky only engaged in cocaine operations during leaves of absence from law school.

Lasky also contends that the court based the sentence on a mistaken belief that Lasky had two prior convictions before involving himself in the crime that led to this conviction. He argues that statements by the sentencing judge show that he did not understand the true situation.[3] We read those statements as meaning no more than that the judge was considering the fact that this was Lasky's third independent conviction for drug dealing.

Moreover, the record shows that the judge understood the true sequence of events. At the sentencing hearing, the court had before it a presentence report that accurately reflected the circumstances

---

1. Lasky argues that the doctrine of nonreviewability of sentences should be abandoned. In fact, however, although courts generally will not review the length of a sentence imposed within the statutory limits, *Dorszynski v. United States*, 418 U.S. 424, 431, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *United States v. Kearney*, 560 F.2d 1358, 1369 (9th Cir.) *cert. denied* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977), absolute nonreviewability of sentences has never been the rule in this court. The cases Lasky cites hold only that appellate courts will not review sentences unless exceptional circumstances exist that motivate review. *See, e. g., Woolsey v. United States*, 478 F.2d 139, 142–43 (8th Cir. 1973).

2. Further evidence of Lasky's involvement during law school comes in the observation that one of the couriers was able to locate Lasky through his law school, and that Lasky arranged for another smuggling transaction while school was in session.

3. The judge stated:

You have two prior convictions . . .. You were granted probation in New York. This is the most impressive pretrial probation presentence I have ever seen. It's magnificent, and if I were the first judge that had seen it, I would probably grant you probation; but I'm the third, and I can't do that.

of Lasky's prior convictions. In addition, the judge had presided over two trials of Lasky, the first of which ended in a hung jury, in which Lasky's involvement in cocaine smuggling was explored in detail.

Finally, at the hearing on the motion to reduce sentence, defense counsel himself made certain that the court understood the chronology of the convictions.[4] Thus, it is clear that the judge was not laboring under misinformation. He had an accurate picture of the chronology.

■ As an additional argument, Lasky asserts that the sentence imposed was so harsh as to constitute an abuse of discretion. This contention also is without merit. The sentence was less than one-fourth the maximum for the offense, and one-half the sentence that was recommended by the probation department.

■ As for Lasky's claims of rehabilitation, the judge did emphasize how impressed he was by the people who had similarly vouched for him in 1967. In these circumstances the court's refusal to credit the defendant's assertions of rehabilitation cannot be deemed an abuse of discretion.

■ Lasky's last argument is that the court denied him due process by applying a mechanical, rather than an individualized, approach to sentencing.[5] A mechanical approach conflicts with sentencing guidelines announced by the Supreme Court. *See Williams v. Oklahoma*, 358 U.S. 576, 585, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed.2d 1337 (1949).

■ It is evident that the judge here carefully weighed many factors in arriving

at an appropriate sentence. These included Lasky's personal background and prior criminal record, the amount of cocaine involved, Lasky's role in the venture, his false testimony at trial, letters and testimony in support of Lasky, and his claims of rehabilitation. The district court cannot be said to have employed a mechanical approach and its imposition of two concurrent seven-year sentences did not constitute an abuse of discretion.[6]

AFFIRMED.

---

4. Mr. Ragen [counsel for defendant]:

   May I make one comment with respect to the probation in New York? It's my understanding that the facts in this case arose prior to . . .

   The Court: That's true.

   Mr. Ragen: So I don't believe it could be the basis for revocation, your Honor. Thank you.

   The Court: I am aware of that . . . . .

5. Lasky relies for this argument on the district court's statement: "I commit poverty stricken Mexicans in this court who don't even know

what they have in the car for fifty dollars, and they go to jail. Can I justify not putting you in jail, Mr. Lasky . . . .?"

6. Because the initial imposition of sentence was not an abuse of discretion, this court need not review the court's discretionary refusal to reduce sentence on a Rule 35 motion. *See, e. g., United States v. Kohlberg,* 472 F.2d 1189 (9th Cir. 1973). It is worth noting that at the hearing on the motion it became apparent that the Parole Board had reduced Lasky's sentence to 28 months.