**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Steven Max SAFIRSTEIN, Defendant-Appellant.**

No. 86–5177.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1987.

Decided Sept. 16, 1987.

As Amended Dec. 2, 1987.

Paul L. Seave, Los Angeles, Cal., for plaintiff-appellee.

Donald B. Marks, Beverly Hills, Cal., for defendant-appellant.

Before WALLACE, TANG and ALARCON, Circuit Judges.

TANG, Circuit Judge:

Safirstein appeals from his convictions for willfully making a false statement in violation of 18 U.S.C. § 1001, and for willful failure to report the attempted transportation of more than $10,000 in monetary instruments outside the United States in violation of 31 U.S.C. § 5316(a)(1)(A). We have jurisdiction under 28 U.S.C. § 1291. We affirm the conviction but vacate the sentence and remand for resentencing.

## I

Safirstein arrived at Los Angeles International Airport on February 1, 1986. He intended to depart on Varig Airlines flight No. 841, bound for Panama. U.S. Customs officers were stationed at the jetway because Customs regarded the Varig flight as one frequently used by persons returning to South America after delivering narcotics to the United States. Special Agent Czyrklis observed Safirstein, a young, well-dressed male of Hispanic appearance who appeared to be traveling alone, "acting nervous" and "looking around." Acting on instructions by Czyrklis, Officer Ferjo followed Safirstein up the jetway and drew even with him at a point about twenty feet from the door of the airplane. Ferjo, wearing his official uniform, tapped Safirstein on the shoulder and asked if they could speak. Safirstein agreed.

Ferjo told Safirstein that export of more than $10,000 in currency or monetary instruments was illegal unless reported to Customs. When asked by Ferjo if he was carrying more than the statutory limit, Safirstein told Ferjo he was carrying approximately $2,000. Customs Inspector Fortini then arrived to assist Ferjo and asked Safirstein to continue the conversation out of the jetway. Safirstein assented. Fortini repeated the currency reporting requirements to Safirstein and asked Safirstein if he was carrying more than $10,000. Safirstein repeated that he was carrying about $2,000. Fortini then asked to search Safirstein's carry-on luggage. Safirstein handed the luggage to Fortini. Safirstein was asked a third time if he was carrying more than $10,000; he stated that he was carrying $9,000. Search of Safirstein's bag yielded $9,340 in money orders and $460 in cash. Safirstein was asked a fourth time if he had more than $10,000. Safirstein stated he might have an additional $2,000. Having noticed a bulge in Safirstein's coat pocket, Fortini directed Ferjo to search the pocket. Thereupon Safirstein withdrew from the pocket an envelope which contained money orders worth $96,414. A search of Safirstein's coat revealed an additional $51,296 in money orders. All the money orders were blank as to payee. Safirstein was placed under arrest.

On February 11, 1986, Safirstein was indicted for willfully making a false statement in violation of 18 U.S.C. § 1001, and for willful failure to report the attempted transportation of more than $10,000 outside the United States in violation of 31 U.S.C. § 5316(a)(1)(A). At trial, Customs Officer Cerda testified that routine procedure is to request passengers who state they are carrying more than $10,000 to fill out a currency reporting form before departing. This was not done in Safirstein's case. Routine procedure also is to broadcast an announcement by loudspeaker regarding the currency reporting requirements. This was also not done at the Varig departure area.

Following the jury's verdict of guilty, the district court imposed maximum sentences

of five years for each count, to run consecutively, as well as maximum fines for each count.

Safirstein raises several issues upon appeal, each of which we address in turn.

## II

### A. *The District Court Did Not Err in Denying Safirstein's Motion to Suppress Evidence*

#### Standard of Review

Findings of fact underlying the determination of the lawfulness of a search are reviewed for clear error. *See United States v. McConney,* 728 F.2d 1195, 1200–1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The determination itself is a mixed question of law and fact which is reviewed de novo. *See United States v. Feldman,* 788 F.2d 544, 550 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1361, 94 L.Ed.2d 531 (1987).

#### Analysis

■ Absent restraint on a suspect's freedom of action, a temporary investigatory stop does not rise to the level of a "seizure" of the person within the meaning of the Fourth Amendment. Officers do not violate the Fourth Amendment by approaching an individual in a public place and putting questions to him if he is willing to answer. *See Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d

229 (1983). Thus, not all encounters between law enforcement agents and citizens amount to seizures of the person. It is only when the agent curtails freedom of action, by way of physical force or a display of authority, that a "seizure" has occurred for Fourth Amendment purposes.

■ The officers' actions in stopping and questioning Safirstein did not amount to a "seizure" of Safirstein's person. Safirstein consented to the initial questioning.

■ Once Safirstein had been stopped and questioned, the search of his luggage and the envelope were reasonable because he consented to the searches. Searches conducted pursuant to the consent of the defendant accord with the Fourth Amendment reasonableness requirement if the consent is freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973). *See United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497. *Compare Erwin,* 803 F.2d 1505, 1507 (9th Cir.1986) (suspect refused to consent to search of pack). By the time Safirstein's coat was searched, agents had conclusively determined that Safirstein was carrying in excess of $10,000. Reasonable cause existed to search the coat. *See United States v. Duncan,* 693 F.2d 971, 978 (9th Cir.1982) (recovery of over statutory amount justified strip search at border in currency exporting case), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983). 31 U.S.C. § 5317(b)[1], construed both in light of its history[2] and its interpre-

---

**1.** 31 U.S.C. § 5317(b) provides in pertinent part:
   For purposes of ensuring compliance with the requirements of section 5316, a customs officer may stop and search, at the border and without a search warrant, any vehicle, vessel, aircraft, or other conveyance, any envelope or other container, and any person entering or departing from the United States.
   31 U.S.C. § 5316 provides in pertinent part:
   (a) Except as provided in subsection (c) of this section, a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly—
   (1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—
   (A) from a place in the United States to or through a place outside the United States ...

(b) A report under this section shall be filed at the time and place the Secretary of the Treasury prescribes....

**2.** The Senate Report on the 1984 amendment to § 5317(b) reads in pertinent part:
   This on the spot authority of the Customs Service would significantly enhance the effectiveness in monitoring and apprehending persons reasonably believed to be violating the currency reporting provisions of the law.
   The Committee is fully convinced that such authority is not only needed, but constitutional, under the line of cases holding that warrantless "border searches" are reasonable even without probable cause under the Fourth Amendment.
   S.Rep. No. 98–255, 98th Cong., 2d Sess. 303, *reprinted in* 1984 U.S.Code Cong. & Admin. News at 3182, 3482.

tation by other courts [3], requires only "reasonable cause" and does not require probable cause in order to sustain the searches and seizures it contemplates.

B. *The District Court Did Not Err in Sentencing Safirstein to Multiple and Consecutive Sentences for Two Criminal Violations Arising out of Only a Single Criminal Undertaking*

■ Safirstein argues that he was wrongly sentenced because each statutory violation was but part of a single criminal undertaking for which he could receive only a single punishment. He relies on *United States v. Palafox*, 764 F.2d 558, 562 (9th Cir.1985), for the proposition that his false statement and the attempt to transport money outside the United States constituted but a single course of conduct for which Congress could not have intended cumulative punishments. We disagree.

In the past, Congress has criminalized successive steps toward an act in a single statute when it wished to punish an act frustrated before its completion as well as the completed act. *See United States v. Wilson*, 781 F.2d 1438, 1439 (9th Cir.1986) (Congress did not intend multiple punishment for criminal who completes more than one step of the crime). But here, Congress intended to permit punishment under both statutes for conduct violative of both 18 U.S.C. § 1001 and 31 U.S.C. § 5316(a). *United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985) (per curiam), *rev'g* 726 F.2d 1320, 1326 (9th Cir. 1984). Proof of a currency reporting violation does not necessarily include proof of a false statement. The converse is even more obviously true. *United States v. Salinas-Ceron*, 755 F.2d 726 (9th Cir.1985), *vacating* 731 F.2d 1375 (9th Cir.1984). One may commit the "ultimate act" of willful failure to file the requisite report without

violating the false statement statute; but the defendants in *Palafox* and *Wilson* could not possibly have committed the ultimate act without having also committed the predicate act. Hence, the reasoning of *Palafox, Wilson* and *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), is inapposite here.

C. *The District Court's Drawing of Unreasonable Inferences From the Record and Presentence Report, on which Inferences It Relied in Sentencing Safirstein, Violated Safirstein's Fifth Amendment Guarantee of Due Process of Law*

*Standard of Review*

Generally, sentences conforming with statutory maxima are not subject to review upon appeal. *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *United States v. Barker*, 771 F.2d 1362, 1364 (9th Cir.1985). But there is a difference between reviewing a sentence and evaluating whether certain types of information should have been considered in imposing that sentence. *United States v. Weston*, 448 F.2d 626, 631 (9th Cir.1971), *cert. denied*, 404 U.S. 106, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). We review the record to evaluate whether a persuasive basis exists for the conclusions reached by the trial judge. *See United States v. Campbell*, 684 F.2d 141, 154 (D.C. Cir.1982).

*Analysis*

The D.C. Circuit has aptly described the quandary presented by this sort of case as reflecting "two fundamental propositions ... at war." *Id.* at 152. The first proposition is that the trial judge may consider a wide, largely unlimited variety of information in sentencing:

> would be attempting to smuggle currency out of the country, courier profile, and inconsistent behavior and responses of defendants furnished "reasonable cause" within meaning of § 5317(b)). *Cf. United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, (1977) (statute authorizing search of vessels if "reasonable cause" to suspect contraband aboard requires less than probable cause; citing *Terry v. Ohio* ).

---

3. *See United States v. Salinas-Garza*, 803 F.2d 834, 877 (5th Cir.1986) ("reasonable cause" standard of § 5317(b) equivalent to "reasonable suspicion" standard employed in evaluating reasonableness of *"Terry* stops") (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)); *United States v. Zapata*, 647 F.Supp. 15, 19 (S.D.Fla.1986) (information that five women

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3577. *See United States v. Grayson,* 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978) (quoting *United States v. Tucker,* 404 U.S. 443, 446 (1972)); *United States v. Messer,* 785 F.2d 832, 833 (9th Cir.1986). The panorama of information available enables the court to insure that the punishment fits not only the crime, but the individual defendant as well. *See United States v. Barker,* 771 F.2d 1362, 1365 (9th Cir.1985).

The second proposition is that the Fifth Amendment guarantee of due process protects the defendant from consideration of improper or inaccurate information. *See United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Sand,* 541 F.2d 1370, 1378 (9th Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 553 (1977). For example, a court violates due process when it makes assumptions about a defendant's criminal record which are materially untrue, and which the defendant has no opportunity to correct due to the lack of counsel. *Townsend v. Burke,* 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). Finally, this Court has held that reliance upon information which is materially untrue or, if not shown to be false, to be so lacking in indicia of reliability as to be of little value violates due process, and requires remand for resentencing. *Weston,* 448 F.2d at 634; *United States v. Conforte,* 624 F.2d 869, 883 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). *See also United States v. Lasky,* 592 F.2d 560 (9th Cir. 1979); *Farrow v. United States,* 580 F.2d 1339 (9th Cir.1978); *United States v. Wondrack,* 578 F.2d 808 (9th Cir.1978); *United States v. Stevenson,* 573 F.2d 1105 (9th Cir.1978).

■ Corollary to the second principle is that unfounded assumptions or groundless inferences although based upon proper and accurate information may not, consistent with due process, form the basis of sentence. *See Roberts v. United States,* 445 U.S. 552, 563, 100 S.Ct. 1358, 1365, 63 L.Ed.2d 622 (1980) (Brennan, J., concurring) (citations omitted); *Conforte,* 624 F.2d at 883; *United States v. Baylin,* 696 F.2d 1030, 1042 (3d Cir.1982); *United States v. Malcolm,* 432 F.2d 809, 816 (2d Cir.1970). It is this corollary principle which concerns us here. We are not confronted by a situation in which unsubstantiated allegations or other unreliable information is made the basis of defendant's sentence, as in *Weston.* Instead, we confront the drawing of inferences from uncontroverted information—inferences of involvement in a more serious crime, drawn from facts proven of the offense and from the presentence report. We are not faced with misinformation placed before the trial judge, but instead by a characterization or conclusion of the legal import of the accurate factual information before him. *See Conforte,* 624 F.2d at 883; *Baylin,* 696 F.2d at 1042; *Malcolm,* 432 F.2d at 816. The trial court inferred that Safirstein was a participant in a crime with which he was not charged. The inference directly resulted in the enhancement of Safirstein's penalty. The question is what, within the wide deference accorded to sentencing discretion, can be done about the improper characterization or drawing of an inference. *See Weston,* 448 F.2d at 631.

■ The district court's statements reveal no ambiguity as to the inferences it drew from the materials before it:

[L]et's understand from the beginning of this discussion just exactly what we are talking about. We are talking about a medical doctor who has become involved in the narcotic drug trade. This money didn't come from horse racing or from a poker game. It is well-known to everybody, including this court, that this is part of the international drug ring. It's a part of the entire conspiracy to smuggle drugs into this country and to smuggle money out; and the person that smuggles the money out of the country is just as important a player as the ones who smuggle the drugs in....

I might say that within the last two weeks anyone who has been reading the newspaper or watching television has seen demonstrated vividly the terrible nature of these drugs that are pouring into this country; and for a medical doctor to become part of that ring I find to be inexcusable.

Safirstein's counsel vigorously protested the court's characterization of his client as a drug trafficker. Nevertheless, the court persisted:

I am going to make it very clear that I am going to sentence him as a drug trafficker; and if I am wrong in that assumption, then the Court of Appeals can do what it feels it has to do and send it back to me for sentence reconsideration....

Do you expect the court to turn its eyes away from what we see every day? We know that this cocaine is pouring into this country and the profits are pouring out ... I'm treating this as a drug trafficking case. In my opinion that's what it's all about....

I have made the record as clear as I can make it so the Court of Appeal [sic] will know exactly what is on my mind, and I have listened to your argument and I intend to sentence Dr. Safirstein as a drug trafficker because that is what he is in my opinion.

Notwithstanding the firmness of the court's belief, it *then* asked the government if it wished "to take a position as to [its] view as to the source of this money." The government summarized the portion of its sentencing memorandum which described only its unavailing efforts to interview the persons residing at the apartment to which Safirstein allegedly made a telephone call during his stay. Following Safirstein's exercise of his right of allocution, the court continued:

In sentencing the defendant, I have, as I indicated earlier, I have reached the conclusion, based on the evidence in the case and the logical inferences to be drawn from the evidence that this money was the product of illegal drug activity. Now, I have said that now at least three times for the record; and if that inference is found by the Court of Appeal

[sic] to be unreasonable, then they can take appropriate action with regard to the sentence the court is going to impose. I do not think that courts have to be blind to what is going on in this country. In the last couple of weeks we have seen two fine young athletes killed by cocaine.... We are being flooded with the stuff....

I do not think that judges should just stand by and pretend that cases like this are just some sort of a Customs violation, in the same category as someone who imports a piece of elephant tusk or doesn't declare a Rolex watch that he is bringing into the country because it exceeds his allowance.... So much for the type of transaction that I conclude that it is.

The district court abused its discretion in sentencing Safirstein to the statutory maxima based upon its inference of involvement in drug trafficking, an offense which was not proven at trial and which found no support in either the record or the presentence report. The record and the report could support inferences of other activities, legal or illegal, as readily as they support an inference of trafficking in narcotics. *Cf. Conforte,* 624 F.2d at 883 (just as reasonable to assume that defendants filed *Sullivan-Garner* tax returns in order to avoid possible incrimination under laws unrelated to revenue collection as to assume filed in order to avoid tax incrimination). The district court's strong feelings to the contrary lacked support in the materials it had before it. *See id.; United States v. Looney,* 501 F.2d 1039, 1042 (4th Cir.1974); *United States v. Powell,* 487 F.2d 325, 328– 29 (4th Cir.1973).

We note further that Safirstein vigorously protested the court's characterization of him as a drug trafficker. *Compare Weston,* 448 F.2d at 631, *with Wondrack,* 578 F.2d at 810, *Bass,* 535 F.2d 110, 121 (D.C. Cir.1976), and *Williams v. New York,* 337 U.S. 241, 244, 69 S.Ct. 1079, 1081, 93 L.Ed. 1337 (1949). Hence, this is not a case in which the absence of denial provides an indicia of reliability. *See United States v. Hull,* 792 F.2d 941, 943 (9th Cir.1986); *United States v. Leonard,* 589 F.2d 470,

471 & n. 2 (9th Cir.1979); *Bass,* 535 F.2d 110 at 121 & n. 21. *Cf. United States v. Janiec,* 464 F.2d 126 (3d Cir.1972) (unfair to force defendant to prove absence of convictions).

Nor does the inference drawn here by the district court approximate the reasonableness of inferences previously upheld by this Court. *See United States v. Stewart,* 799 F.2d 580, 583 (9th Cir.1986) (reasonable to infer that defendant convicted of various narcotics violations was also engaged in their manufacture); *Hull,* 792 F.2d 941 at 942–43 (disappearance of jewelry packages from defendant's section, thefts stopped after she was arrested, pawning of jewelry provided sufficient indicia of reliability to support inference that defendant was responsible for earlier thefts); *United States v. Robelo,* 596 F.2d 868, 870 (9th Cir.1979) (reasonable to infer that that defendant was likely member of conspiracy and had committed similar crimes previously given implausibility of assertion that he acted alone while unemployed in saving $9,000 to buy cocaine). Here, there is not the barest scintilla of evidence that Safirstein was connected with narcotics.

█ We further reject the district court's insistence that Safirstein affirmatively refute the characterization of him as a drug trafficker. Safirstein had no duty to refute the characterization. *Weston,* 448 F.2d at 634; *United States v. Perri,* 513 F.2d at 572, 574 (9th Cir.1975). Nor is it a case where the rule is applicable that a defendant's failure to refute allegations in a presentence report waives a challenge to the accuracy of the information, *see United States v. Morgan,* 595 F.2d 1134, 1135–36 (9th Cir.1979), *United States v. Miller,* 588 F.2d 1256 (9th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). There were no allegations of drug trafficking in the presentence report. Indeed, the presentence report suggests the contrary. It relates: (1) that Safirstein made a similar trip two weeks previously; (2) that residents of an apartment to which Safirstein made a telephone call during his stay told the United States Attorney that they would take "the Fifth Amendment" if subpoenaed; (3) the facts of Safirstein's crimes as proven at trial; and (4) Safir-

stein's family, educational and professional history. The report concludes as follows:

We know he failed to report $157,000 in negotiable instruments while trying to leave the country. The Government speculates that it is drug money *although there is no offering of evidence to support this contention* ... This young man's direction in life has been clearly prosocial, positive and constructive. The best of us are not immune to an episode of bad judgment or a lapse of good sense. In this case, those descriptions reached criminal proportions which may not be reflective of the defendant's lifestyle, but rather of an aberration.

(emphasis supplied). We do not suggest that the district court is required to sentence in strict conformity with the conclusion of a presentence report. But the conflict between the district judge's conclusions about the defendant and the probation department's conclusions, which were based upon the only evidence the government could muster in support of its bare allegation, certainly merits attention in evaluating the reasonableness of the district court's inferences.

A sentence must be vacated if the district court demonstrably relies upon false or unreliable information. *Farrow v. United States,* 580 F.2d 1339, 1359 (9th Cir. 1978) (en banc). Unreasonable inferences and material assumptions which find no support in the record fall within the ambit of the *Farrow* rule. *See Conforte,* 624 F.2d at 883–84. A sentence based upon them is just as dependent on "misinformation of a constitutional magnitude" as a sentence predicated on unconstitutionally obtained convictions or other manner of improper and inaccurate information. *See Tucker,* 404 U.S. at 447, 92 S.Ct. at 592. Accordingly, we must vacate Safirstein's sentence, and remand for resentencing.

D. *The District Court's Characterization of Safirstein's Failure to Cooperate as a Lack of Remorse and its Reliance thereon in Sentencing, Violated Safirstein's Fifth Amendment Privilege against Self-Incrimination*

█ A second ground for resentencing emerges in the district court's considera-

tion of Safirstein's refusal to cooperate with the prosecution, *i.e.* identify the sources of money and the persons involved in the alleged narcotics trafficking conspiracy:

> I warned him at the time that he was convicted and at the time I referred this to the probation department that if he had any hope of consideration from this court to—by way of showing some remorse or contrition about this offense, that I expected him to be completely forthcoming about details of where this money came from and who was involved, and instead I got nothing. He has stonewalled completely....
>
> [H]e has covered up for at [sic] the other people and he has done nothing.

As he did with regard to the court's characterization of Safirstein as a drug trafficker, defense counsel protested vigorously.

> [M]y client has a Fifth Amendment right.... Now that he finds himself convicted, as his attorney I have advised him not to discuss the details of this case because it is my opinion that discussing the details of this case can in fact impact adversely on his appeal....

The court had little patience with this argument.

> [O]ne of the tests of true remorse is an attempt to try to undo some of the harm that has been done. There are other people, and he well knows who they are, that as far as we know are still engaged in this nefarious drug traffic and he could help bring them to justice if he felt so inclined. That is something of a positive nature that he could do and that he has declined to do. He says, well, I don't want to talk because—I suppose he hopes to get the case reversed and have another trial, but that just shows me that he's just stonewalling and he's not—he's not truly remorseful.

Notwithstanding Safirstein's expressions of remorse, the district court apparently considered Safirstein's failure to cooperate as a barometer of that remorse. The conclusion of a lack of remorse on that basis is unjustified.

We here reiterate that a sentencing judge may not penalize the exercise of a defendant's privilege against self-incrimination by enhancing his sentence based upon the defendant's failure to cooperate by implicating other persons or otherwise admitting guilt to crimes with which he is not charged. *United States v. Messer,* 785 F.2d 832, 834 (9th Cir.1986). *See Jones v. Cardwell,* 686 F.2d 754, 756 (9th Cir.1982). *See also DiGiovanni v. United States,* 596 F.2d 74 (2d Cir.1979); *United States v. Garcia,* 544 F.2d 681, 684–85 (3d Cir.1976); *United States v. Acosta,* 501 F.2d 1330, 1337–38 (3d Cir.1974) (Gee, J., dissenting), *cert. denied,* 423 U.S. 891, 96 S.Ct. 188, 46 L.Ed.2d 122 (1975), *modified,* 509 F.2d 539 (1975). These authorities acknowledge the straightforward proposition that implication of others often amounts at least to tacit admission of one's own complicity. *Contra United States v. Miller,* 589 F.2d 1117 (1st Cir.1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979); *United States v. Hayward,* 471 F.2d 388 (7th Cir.1972); *United States v. Vermeulen,* 436 F.2d 72 (2d Cir.1970), *cert. denied,* 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653 (1971).

There is no indication in the record that the government offered Safirstein immunity. Therefore, Safirstein thus had thrust upon him the "Hobson's choice" of either (1) cooperating, receiving lenity, and risking additional prosecution, or (2) refusing to cooperate and receiving a harsher sentence. *See Garcia,* 544 F.2d at 685. To impose such a choice on Safirstein violated his Fifth Amendment privilege. The essence of that privilege is that the state both convict *and* punish the individual by producing evidence by its own independent efforts, and not by the "simple, cruel expedient" of coercing it from his own lips. *See Cardwell,* 686 F.2d at 756 (quoting *Estelle v. Smith,* 451 U.S. 454, 462, 101 S.Ct. 1866, 1872, 68 L.Ed.2d 359 (1981)).

Nor does *Roberts* compel a different result. In *Roberts* the Supreme Court held that a sentencing judge's consideration of a defendant's refusal to cooperate by identifying other persons involved in a heroin conspiracy did not violate Roberts' guaran-

tee of due process under the Fifth Amendment. 445 U.S. 552, 559–60, 100 S.Ct. 1358, 1363–64, 63 L.Ed.2d 622. One critical fact distinguishes *Roberts* from the case at bench. In *Roberts* the defendant provided no valid reason for his refusal to cooperate; he merely asserted that he "wasn't that involved in it." Roberts failed to invoke his privilege against self-incrimination in defense of his refusal to cooperate. Accordingly, there was no indication that Roberts' refusal to cooperate was legitimately motivated:

> These arguments would have merited serious consideration if they had been presented properly to the sentencing judge. But the mere possibility of unarticulated explanations or excuses for antisocial conduct does not make that conduct irrelevant to the sentencing decision. The District Court had no opportunity to consider the theories that petitioner now advances, for each was raised for the first time in petitioner's appellate brief. Although petitioner knew that his intransigency would be used against him, neither he nor his lawyer offered any explanation to the sentencing court. Even after the prosecutor observed that the failure to cooperate could be viewed as evidence of continuing criminal intent, petitioner remained silent.

445 U.S. at 559, 100 S.Ct. at 1363. *See id.* at 563, 100 S.Ct. at 1365 (Brennan, J., concurring). Such a situation is distinct from that presented here, where it is evident from the outset that Safirstein sought, by his refusal, to assert his privilege. In such circumstances, the refusal to cooperate does not necessarily reflect adversely upon a defendant's prospects for rehabilitation. Therefore, the concerns raised in *United States v. Hull*, 792 F.2d 941, 943 (9th Cir. 1986), *United States v. Long*, 706 F.2d 1044, 1055 (9th Cir.1983), and *Gollaher v. United States*, 419 F.2d 520, 529–31 (9th Cir.1969), are absent.

None of Safirstein's other contentions have merit. The judgment of conviction is affirmed. The sentence is vacated, and the cause remanded for resentencing.