In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2150

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LUZ M. SUAREZ,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 801--Ruben Castillo, Judge.


Argued November 10, 1999--Decided August 15, 2000


 Before POSNER, ROVNER and DIANE P. WOOD, Circuit
Judges.

 ROVNER, Circuit Judge.  Luz Marie Suarez was
charged with making a false statement to the U.S.
Customs Service and failing to report $129,710
that she was attempting to transport from the
United States to Mexico. The district court
applied a two-level sentence enhancement under
U.S.S.G. 2S1.3(b)(1) premised on its finding that
she "knew or believed that the funds were
proceeds of, or intended to promote unlawful
activity." The only issue on appeal is whether
the court erred in applying that enhancement.

 In reaching that conclusion, the district court
adopted the Presentence Investigation Report
(PSI), and Suarez did not dispute the facts as
set forth there. According to the PSI, Suarez
checked luggage at O'Hare Airport for a scheduled
flight set to depart to Mexico. Routine x-ray
screening revealed a suspicious package in the
luggage, which prompted inspections officials to
question Suarez. A Customs Inspector approached
her on the jetway and provided her with a notice
explaining the currency reporting requirements in
Spanish, her primary language. The inspector
explained to her in Spanish that if she were
carrying any monetary instruments exceeding
$10,000, either on her person or in any of her
luggage, she was required to file a report.
Suarez responded that she recently sold her

house. The inspector asked her again if she had anything to declare. Suarez then falsely stated that she was carrying only $400 in United States currency, and signed a notice to that effect.

Suarez was subsequently taken to the customs office where she acknowledged ownership of the luggage she had previously checked. Inside one of those pieces of luggage was approximately $129,710 in United States currency. The currency was hidden between two pieces of plywood and wrapped in cellophane tape.

A subsequent investigation by the government revealed that she had received $48,212 in 1997 when she refinanced her home, and an additional $6,712.58 in 1998 when she sold her home. Even deducting all of those proceeds from the $129,710 would still leave unaccounted $73,785.42. In addition, unverified information reported by Suarez indicated that: she worked at a cat and dog food cannery from 1991 to 1992 earning approximately $600 per month; she worked odd jobs from 1993 to 1995 but had no permanent employment during that time period; she co-owned a restaurant with her brother from 1995 until 1997 but did not draw a set salary and sold her half of the restaurant to her brother in 1995 (she was not specific about the money she received in that sale); and she was not working at the time of her arrest in 1998. She further reported that the highest grade she completed in Mexico was the third grade.

As an initial matter, we examine the meaning of her statement in the jetway concerning the sale of her home. The Presentence Investigation Report characterized the conversation in the jetway as a statement by Suarez that the money she was transporting was the proceeds from the sale of her house. That is a reasonable interpretation given that her statement regarding the sale of her home followed the inspector's explanation of the reporting requirement. Significantly, Suarez did not object in the district court to that characterization of her statement. In fact, in her objections to the PSI, she declared that she "does not dispute the existence of the factors relied upon by the government in seeking application of the enhancement," including the factor that she described as follows: "The defendant told the agent that the currency was the proceeds from the sale of her home, knowing this to be false, based upon the documents obtained by the government relating to the sale of her property." She also concedes that fact on appeal. Therefore, one fact properly considered in the district court and on appeal is that she lied about the source of the money, falsely stating that it represented the proceeds of the

sale of her home.

Suarez' argument on appeal is that the government failed to meet its burden of showing, by a preponderance of the evidence, that she knew or believed that the funds were the proceeds of or were intended to promote unlawful activity. See United States v. Hassan, 927 F.2d 303, 308 (7th Cir. 1991) (appropriate standard is preponderance). The essence of her argument is that the facts relied upon by the district court were insufficient to justify the court's conclusion, and that the court improperly disregarded facts that tended to negate the inferences suggested by the government. This court gives deference to a district court's sentencing determinations, and will not disturb a district court's findings of fact unless clearly erroneous. Id. at 309. A finding of fact is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Sauerwein, 5 F.3d 275, 278 (7th Cir. 1993), quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." 5 F.3d at 278, quoting 470 U.S. at 574.

The relevant facts are undisputed, and the only question is whether the district court erred in determining that those facts demonstrated that it was more likely than not that Suarez knew or believed that the funds were the proceeds of unlawful activity or were intended to promote such activity. The facts favoring such a conclusion include the manner in which the money was packed so as to avoid detection, Suarez' dishonest response when asked if she was carrying more than $10,000, Suarez' false representation that the money constituted the proceeds of the sale of her home, and the employment history that seemed to negate a legitimate source for the money. In response to that, Suarez argues that she traveled under her own name at all times, that she carried valid identification and was truthful regarding her current residence and the sale of her former residence, and that she had no prior criminal record.

It is not the role of this court to reweigh the evidence and determine in the first instance whether the government met its burden. Instead, we are limited to a determination of whether the district court's conclusion was clearly erroneous. It was not. Although Suarez was truthful in some respects such as her identity, she was not honest regarding the key issue of the source of the money. Of course, Suarez does not

have to give any explanation for the source of the money, and her silence cannot be held against her. Here, however, she did not remain silent regarding the genesis of the fortune. Instead, she volunteered a source for the money which proved to be a lie. She concedes that she falsely represented that the money represented the proceeds of the sale of her home. That duplicity, combined with her denial of the existence of the cash and her placement of the large sum of currency in her checked luggage packaged so as to avoid detection, supports the district court's conclusion that the money was more likely than not related to unlawful activity. Although Suarez was not required to account for the money, her failure to repair her false attribution of the source of the money left the court with little to counter the inference raised by the above facts. Her lack of a prior criminal record and use of her true identity are insufficient to leave us with the firm conviction that a mistake has been made. This is precisely the type of case in which there are two permissible views of the evidence, and the factfinder's choice between them cannot be considered clearly erroneous. Sauerwein, 5 F.3d at 278, quoting Anderson, 470 U.S. at 574.

 We note briefly that the cases relied upon by Suarez are inapposite. Unlike Safirstein, 827 F.2d 1380, and United States v. $506,231, 125 F.3d 442 (7th Cir. 1997) (a forfeiture case argued by analogy), the district court in this case did not base its decision solely on the amount of the money, the manner of storing it, and/or the failure to truthfully report it. Here, the court had not only her lies regarding the existence of the money, but critically had her duplicity regarding the source of the money as well. Lying about the source gives rise to an inference that the source is illegitimate. In addition, the court had Saurez' recounting of her employment history which failed to reveal a legitimate basis for the funds. A natural inference from the lie and the surrounding circumstances is that the source was not lawful, and Suarez chose not to rebut that inference. We agree that "unfounded assumptions or groundless inferences although based upon proper and accurate information may not, consistent with due process, form the basis of [a] sentence." Safirstein, 827 F.2d at 1385; see also Hassan, 927 F.2d at 308. The inference drawn by the court in this case, however, is not without support in the facts, and the standard of review precludes a contrary finding by this court. Accordingly, the decision of the district court is affirmed.