Filed 8/29/13  P. v. Herrera CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALFREDO ARIAS HERRERA,<br><br>    Defendant and Appellant. | A134497<br><br>(Mendocino County<br> Super. Ct. Nos.<br> SCUK-CRCR-11-0018064 &<br> SCUK-CRCR-11-0018468) |
| In re ALFREDO ARIAS HERRERA,<br><br>    on Habeas Corpus. | A136618 |

Defendant Alfredo Arias Herrera appeals from a judgment entered after his plea of guilty to the felony offenses of possession of a controlled substance for sale (Health & Saf. Code, § 11378) and attempted witness intimidation (Pen. Code, § 136.1, subd. (a)(2)).  He was sentenced to the upper term of three years for the attempted witness intimidation conviction, to be served concurrently to the middle term of two years for the drug conviction.  On appeal Herrera seeks a new sentencing hearing on the ground the trial court made misstatements about the underlying prosecution giving rise to the attempted witness intimidation offense.  He also contends on direct appeal and in a petition for a writ of habeas corpus[1] that his trial counsel was ineffective for failing to

---

[1]    We consolidated the petition with this appeal.

1

object to the trial court's misstatements.  We conclude Herrera's contentions do not require reversal and a remand for resentencing.  Accordingly, we affirm the judgment and deny the petition for writ of habeas corpus, and the related request for judicial notice of the record on appeal.

## FACTS

### A.    *Background*

On October 21, 2011, the district attorney filed two informations.  In case No. 11-0018064, Herrera was alleged to have committed the felony offenses of transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), and possession of methamphetamine for sale (Health & Saf. Code, § 11378), arising from an incident on June 16, 2011.  In case No. 11-0018468, Herrera was alleged to have committed the felony offense of attempted witness intimidation (Pen. Code, § 136.1, subd. (a)(2)), with special allegations that the offense was committed on August 14, 2011, with "force and/or . . . the threat of force or violence upon the witness, or any third person," and that at the time of the offense Herrera was released from custody on the prior drug offenses.

### 1.    *Change of Plea Proceeding*

At a change of plea proceeding, Herrera agreed to plead guilty to the felony offenses of possession of a controlled substance for sale in case No. 11-0018064 and attempted witness intimidation in case No. 11-0018468.  In exchange for the pleas, the prosecutor agreed to dismiss the remaining charge in case No. 11-0018064 and the special allegations in case No. 11-0018468.  As to the factual basis for the drug offense, counsel stated that on June 16, 2011, Herrera had been pulled over as he was driving a car.  A search of the car revealed about two ounces of methamphetamine in two separate packages.  As to the factual basis for the attempted witness intimidation offense, counsel stated that on August 14, 2011, Herrera went to see a witness in a domestic dispute incident, and during a discussion the witness felt intimidated because Herrera grabbed him by the shoulders, shook him, and told him he better change his story or he would get beat up.  Herrera understood he could be sentenced to state prison for a maximum term of three years and eight months for both convictions.

2

## 2.    *Sentencing Proceeding*

Before sentencing, Herrera's trial counsel filed a statement in mitigation for each case, and the probation department officer filed a report for each case.  In his statements of mitigation, defense counsel alleged, in pertinent part, that all of Herrera's criminal conduct was a consequence of his methamphetamine addiction; he had never participated in any drug treatment program, but since his current convictions he had on his own, applied for and been accepted to a drug treatment program; he requested the opportunity to participate in treatment; and he was greatly remorseful for his criminal behavior.

In the probation department reports, the probation officer included the following information.  Twenty-seven-year-old Herrera was facing sentence on his second and third felony convictions.  Herrera had concededly used methamphetamine on a daily basis for the past 10 years, and considered himself an alcoholic, having consumed alcohol on a daily basis for the past five years.  He never sought any treatment for his addictions because he was not motivated to do so.  However, since his current convictions, he was ready to take responsibility for his behavior because he now had children.  At the time of the commission of the offenses, Herrera was on two grants of summary probation for misdemeanor convictions for driving under the influence (2008) and driving with a suspended license (2010),  he had served a prior 13-month prison term for a felony drug offense in the State of Washington (2004), and had a prior misdemeanor conviction for driving without a valid driver's license (2009).

The probation officer described the factual circumstances of the two cases based on police reports and the statement of the intimidated witness.  On June 16, 2011, two police officers stopped Herrera while he was driving his car.  A police dog alerted the officers to the presence of a controlled substance in the car.  A search of the car revealed an open box of sandwich bags, a digital scale, and two sandwich bags containing a total of about 55 grams of methamphetamine.  A search of Herrera's person revealed a glass pipe commonly used for smoking methamphetamine, and $2,253.30.  After Herrera was released on bail on the drug offenses, he was arrested two months later after he threatened a neighbor who had witnessed a domestic violence dispute between Herrera and his

3

girlfriend. On August 10, 2011, Herrera's neighbor reported the domestic violence dispute to the police. The police arrested Herrera based on the neighbor's statements and other physical evidence. Four days later, on August 14, 2011, Herrera was released on bail on the domestic violence offense and confronted the neighbor at his neighbor's home at 9 p.m. in the evening. Herrera said the neighbor needed to change the statement he had given to the police and complete a different written statement. The neighbor refused because he did not want problems with law enforcement. Herrera said that if the neighbor did not do what was asked, Herrera would go to the police and make a report that the neighbor was abusing his children so they would be taken away by "CPS." The neighbor continually stated he did not want to lie to the police, but Herrera said the neighbor " 'would be sorry' " if he did not. Before he left, Herrera pointed his hand and made a gesture with it, simulating the firing of a handgun at the neighbor. The neighbor was extremely concerned and believed Herrera would carry out his threats because of the domestic violence incident he had witnessed and the rumors of Herrera's involvement in the use and sale of illegal drugs.

The probation officer recognized the egregiousness of the attempted witness intimidation offense, but noted that Herrera claimed he made a serious error in judgment, which was exacerbated by his drug use. Herrera claimed that at the time of the August 14 incident, he was under the influence of methamphetamine, he never intended to act on his threats, and his motivation was simply to help his girlfriend regain custody of her daughter who had been taken by child protective services. The probation officer conceded that, "[t]ypically, in a case involving such a significant amount of methamphetamine, as well as several other aggravating circumstances (prior felony drug offense and victim intimidation)," he would not hesitate to recommend a state prison commitment. However, in this case, the probation officer was recommending probation, which was a "bit unusual," and "with some reservation," because of Herrera's "frankness and accountability regarding his behavior," and his apparent sincere desire to change his behavior, having already taken the initiative of applying for and being accepted in a residential drug treatment program. The probation officer also opined that Herrera's

4

"remorse did not feel forced or artificial," and he seemed "to really want to be a good father to his children."

Before imposing sentence on January 20, 2012, the trial court acknowledged having read and considered (1) the probation reports on each case, and (2) the defense counsel's sentencing statement in mitigation submitted on each case. The court then informed the parties of its tentative sentence "not to follow the probation officer's recommendation" as the court believed that the combination of the cases required a prison term. As to the drug conviction, the court commented that "this is an enormous amount of methamphetamine. And Mr. Herrera has a prior conviction from 2004, a felony conviction from Washington State where he was sent to prison for drug distribution. He was on probation . . . in another matter when he committed this offense. . . . There is no indication in the record that Mr. Herrera committed the [current drug offense] to support his own habit" based on the quantity of drugs. As to the attempted witness intimidation conviction, the court again commented that at the time of the commission of this offense of a "violent nature," Herrera was "already on [a] grant of summary probation when he committed this offense," and "he had a felony drug offense pending. And the combination of the two events happening so [close] in time . . . does not merit a grant of probation."

In response to the court's comments, Herrera's counsel stated: "Your Honor, to put it simply my client is an addict, has been an addict for most of his adult life. The behavior in the intimidation of a witness charge all relates to the underlying matter, which is possession of methamphetamine for sale. He's a typical methamphetamine abuser who sells in order to maintain his own habit. That is his pattern. And as the court indicated it is even reflected back to the Washington disposition." Defense counsel asked the court to give Herrera one final opportunity to turn his life around by allowing him to participate in a drug treatment program. The trial prosecutor argued the commission of the two offenses did not demonstrate conduct by someone who was "just simply an addict," but rather a criminal who had had multiple chances.

The court acknowledged that Herrera might want to and had to participate in a drug program because of his desperate position, but the court could not "overlook the cost of public safety for this amount of methamphetamine, especially [as Herrera had] been in prison." "[A]nd then when you are out of custody on this case, you go and intimidate a neighbor using threatening gestures, you are dissuading them from being a witness in the underlying narcotics case. This is not a probation case. . . . [¶] . . . [¶] And, [defense counsel], I appreciate your comments. I heard your comments. I am considering your comments. I think that Mr. Herrera could . . . benefit from a residential treatment program. But the cost to the public of his conduct is f[ar] greater than a residential program can offset at this time. I think he's a threat to society based on his violent conduct and dissuading a witness or attempting to dissuade a witness in this action. So I am going to deny probation." The court then asked Herrera if he wanted to make a statement. Herrera replied that his criminal conduct was a consequence of his drug use, and he wanted "one chance" at treatment because he now had children and did not want them to see him in prison.

When actually imposing sentence for the attempted witness intimidation conviction (the designated principal offense), the court denied probation for the following reasons: "The defendant inflicted extreme emotional trauma on the victim in this matter; the defendant was an active participant in the underlying offense; he has a prior felony drug-related conviction from the State of Washington for which he was sent to prison; he was on a grant of summary probation when this matter occurred; he actually had another pending felony that had not been yet resolved when this incident occurred; the underlying conduct of attempting to dissuade a witness who was a neighbor caused the neighbor to be severely traumatized; I don't believe the defendant can successfully complete probation due to a severe [poly] substance paradigm; while he is remorseful and has recognized that he suffers from [a] serious drug addiction, I find the defendant to be at this time a threat to society." When imposing a prison term of three years, the court stated it was "selecting the aggravated term in part because [Herrera] ha[d] a pending . . . drug prosecution when he committed this offense. The witness intimidation was directed

6

at a witness in that matter and caused the witness to . . . have severe emotional trauma. I think that the conduct in this case was especially egregious in actualizing the intimidation behavior. I think the case merits an aggravated term." When sentencing Herrera for the drug conviction, designated as the subordinate offense, the court denied probation for the reasons previously stated, and imposed a concurrent two-year (middle) term without further comment.

## DISCUSSION

Herrera correctly contends that on two occasions during the sentencing proceeding the trial court mistakenly stated that the underlying prosecution giving rise to the attempted witness intimidation offense was the consolidated drug prosecution. He then contends the court might have imposed probation or the lower term of two years (Pen. Code, § 18, subd. (b)) if it had remembered that the attempted witness intimidation arose from an unrelated domestic violence incident. For the reasons we now discuss, we disagree and conclude reversal and a new sentencing hearing is not required.

The parties present arguments regarding whether Herrera's appellate contention is properly before this court. However, we need not address these arguments. Even assuming Herrera's failure to object in the trial court did not forfeit his claim, he has not demonstrated prejudicial error under any standard of harmless error review (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836), and he has not shown that the sentence was imposed in violation of his constitutional due process rights.

In determining whether the trial court's misstatements were prejudicial, we consider Herrera's failure to bring the error to the court's attention at any time during the sentencing proceeding. (See *Wainwright v. Witt* (1985) 469 U.S. 412, 431, fn. 11 ["failure to speak in a situation later claimed to be so rife with ambiguity as to constitute constitutional error is a circumstance we feel justified in considering when assessing [defendant's] claims"].) After the court's first misstatement, Herrera was given an opportunity to make a statement at which time he could have mentioned the court's misstatement. Had Herrera or his counsel objected on the ground now asserted on

7

appeal, the court could have easily clarified its sentencing choices. Rather, the record indicates neither Herrera, defense counsel, nor the trial prosecutor, were aware of the court's misstatements, and consequently no one objected to them. Such omission strongly "suggests that ' "the potential for [prejudice] argued now was not apparent to one on the spot" ' " (*People v. Young* (2005) 34 Cal.4th 1149, 1203), thereby supporting a finding that the misstatements were neither material nor determinative of the court's sentencing choices.

In all events, we conclude any potential for prejudice "seems minimal even in hindsight." (*People v. Keenan* (1988) 46 Cal.3d 478, 535.) Herrera contends the court's confusion about the facts of the attempted witness intimidation offense caused it to view the motivation for the offense as aggravating rather than mitigating, and resulted in the court overlooking three notable mitigating circumstances: (1) the offense was not likely to recur because he was motivated by the unusual and distressing circumstance of the loss of custody of his girlfriend's child and his effort to regain custody, (2) the impact of his drug addiction on the domestic violence dispute (which led to no charges being filed against him) and his response in threatening the witness, and (3) his remorse. However, the trial court was not required to "weigh aggravating and mitigating circumstances" (*People v. Sandoval* (2007) 41 Cal.4th 825, 847), but rather could rely on one single valid aggravating factor to both deny probation and impose an upper term (*People v. Scott* (1994) 9 Cal.4th 331, 350, fn. 12), and disregard all mitigating factors without comment (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401). Despite the misstatements, the court's sentencing choices in this case did not exceed "the bounds of reasons, all of the circumstances being considered." (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)

We are not persuaded by Herrera's contentions that the court's sentencing choices were or must have been "inevitably influenced" by its mistaken belief regarding the underlying criminal prosecution giving rise to the attempted witness intimidation offense. The court's mistaken belief regarding the attempted witness intimidation offense was not the principal reason for its sentencing choices. Instead, the court enunciated many factors supporting its sentencing choices - including Herrera's actual criminal behavior giving

8

rise to the charged offense of attempted witness intimidation, as well as his criminal background and uncontrolled drug addiction and alcoholism that made him a threat to society.  Because the court's denial of probation and imposition of an aggravated term were supported by appropriate aggravating factors *unrelated to* the circumstances of the current offenses, we can be reasonably certain its misstatements about the attempted victim intimidation offense were not *determinative*.  (Cf. *People v. Cluff* (2001) 87 Cal.App.4th 991, 1002-1005 [resentencing required because evidence did not support "critical finding" made by trial court in denying defendant's *Romero* motion to strike prior conviction].)  On this record, it is not reasonably probable the court would have chosen to impose probation or a lesser prison term had it known that some of its comments were not supported by the record.  (*People v. Price* (1991) 1 Cal.4th 324, 492.) If we remanded the matter, the court would merely refrain from repeating its misstatements, and properly impose the same sentences.  (See *People v. Osband* (1996) 13 Cal.4th 622, 732; *People v. Douglas* (1995) 36 Cal.App.4th 1681, 1692.) [2]

We also reject Herrera's contentions that the court's misstatements violated his state and federal constitutional due process rights.  The cases cited by Herrera hold only that resentencing is required when a trial court demonstrably relies on or gives emphasis to an improper factor that is material or determinative of its sentence choices.  (See *United States v. Tucker* (1972) 404 U.S. 443; *United States v. Borrero-Isaza* (9th Cir. 1989) 887 F.2d 1349, 1352; *United States v. Safirstein* (9th Cir. 1987) 827 F.2d 1380, 1385; *United States v. Weston* (9th Cir. 1971) 448 F.2d 626, 634; *People v. Eckley* (2004) 123 Cal.App.4th 1072, 1081; see also *People v. Belmontes* (1983) 34 Cal. 3d 335, 348, fn. 8 [sentencing court does not exercise " 'informed discretion' " if "sentence is or may have been based on misinformation regarding a material aspect of a defendant's record"].)  Here, as noted, the court's sentencing choices were not based exclusively, or

---

[2]     Because there has been no showing of prejudicial error, Herrera's related claim raised on direct appeal and in his petition for a writ of habeas corpus that his trial counsel was ineffective for failing to object to the court's misstatements must fail.  (See *Strickland v. Washington* (1984) 466 U.S. 668, 697; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

even predominately, on its mistaken belief that the attempted witness intimidation offense arose from the consolidated drug prosecution.  Instead, the court relied on a myriad of other aggravating factors, including that Herrera had a prior felony drug conviction for which he had served a prison term, and at the time he committed the attempted witness intimidation offense he was on summary probation and had a pending drug prosecution.  The court reasonably found unpersuasive Herrera's request to participate in a residential drug treatment program.  "Where . . . the substance abuse problem has led to behavior described as aggravating factors in [California Rules of Court, rule 4.421(b)], such as a pattern of criminal conduct dangerous to society, violations of parole or probation, and unsatisfactory performance on probation or parole, the addiction or alcoholism is properly considered as part of those aggravating factors because it suggests a high probability of further depredations on the public whenever the defendant is again out of custody."  (*People v. Reyes* (1987) 195 Cal.App.3d 957, 964.)  Given the court's sentencing comments in their entirety, we are confident that there is no reasonable possibility the court would have imposed a different sentence but for its mistaken belief that the attempted witness intimidation offense arose from the consolidated drug prosecution.  Accordingly, any error was harmless beyond a reasonable doubt. (*Chapman v. California, supra*, 386 U.S. at pp. 23, 24.)

**DISPOSITION**

The judgment is affirmed.  The petition for writ of habeas corpus, and the related request for judicial notice of the record on appeal, are denied.


_____
Jenkins, J.


We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.