825 P.2d 501

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Scott WHEATON, Defendant–Appellant.**

**No. 19301.**

Supreme Court of Idaho,
Boise, December 1991 Term.

Jan. 30, 1992.

Ringert & Clark, Boise, for defendant-appellant. David Hammerquist (argued).

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

McDEVITT, Justice.

The defendant appeals from an Idaho Criminal Rule 11 conditional plea of guilty to possession of a controlled substance with intent to deliver in violation of I.C. § 37–2732. The defendant was arrested for failure to maintain insurance, in violation of I.C. § 49–1229. A subsequent search of his automobile uncovered cocaine and other drug paraphernalia. The defendant sought to suppress the evidence seized, contending that the search of his vehicle was an unconstitutional search and seizure. The trial court denied the suppression motion. This Court affirms.

On February 17, 1990, Boise Police Officer, David Graves, stopped the defendant's vehicle for traveling in excess of the speed limit. When Officer Graves approached the defendant's vehicle, the defendant handed Officer Graves his drivers license and the vehicle registration. When Officer Graves asked for the defendant's proof of liability insurance, the defendant stated that he did not have insurance. After further questioning, the defendant admitted that he had never had insurance on the car and that he did not intend to purchase insurance on the car. Officer Graves then returned to his patrol car and requested the assistance of another patrol officer. After the second police officer, Sergeant Webb, had arrived on the scene, Officer Graves returned to the defendant's automobile and requested that the defendant get out of the automobile. Officer Graves "patted down" the defendant to check for weapons and placed the defendant under arrest for failure to maintain insurance.

After the defendant had been arrested, handcuffed, and placed in the patrol car, Officer Graves searched the passenger compartment of the defendant's car and discovered a black plastic rectangular box that contained a small set of hand held scales of the type commonly used in drug transactions, ten individually wrapped bindles and two plastic baggies. The bindles and the baggies contained a white powdery substance that appeared to be cocaine. A further search of the defendant's person discovered $395.00 in cash and a ledger-type sheet indicating a series of sales transactions.

The defendant was charged with possession of a controlled substance with intent to deliver in addition to the charge of failure to maintain insurance. The defendant moved to suppress the evidence seized by Officer Graves. The district court denied the motion to suppress. Pursuant to I.C.R. 11(a)(2), the defendant entered a conditional plea of guilty to the charge of possession of a controlled substance with intent to deliver, reserving his right to appeal the denial of his suppression motion. Pursuant to the conditional plea, the State dismissed the charge of failure to maintain insurance.

On appeal, the defendant contends: (1) that the search of his automobile was unconstitutional; and, (2) that this Court should interpret Idaho Const. art. I, § 17, to provide more heightened protection to a criminal defendant than the Fourth Amendment of the United States Constitution.

## I. SEARCH OF THE DEFENDANT'S AUTOMOBILE WAS CONSTITUTIONAL

The defendant does not contest the validity of the initial stop by Officer Graves or his authority to arrest the defendant for failure to maintain insurance. The State asserts that the search of the defendant's car was a valid search incident to arrest as authorized by *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The defendant asserts that *Belton*

does not give a police officer unbridled discretion to conduct a search of an automobile after arresting an occupant of that automobile, but that the police officer must still have a reasonable belief or other justifiable reason to search for a weapon or evidence of the crime for which the individual is arrested.

The defendant misreads the *Belton* decision. The *Belton* Court stated:

Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.

*Id.*, 453 U.S. at 460, 101 S.Ct. at 2864 (citations and footnotes omitted).

In part, *Belton* relied upon *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and applied it to those situations involving the arrest of an occupant of an automobile. The *Belton* opinion explained:

"The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. *A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.*" (Emphasis added.)

*Id.*, 453 U.S. at 461, 101 S.Ct. at 2864, quoting from *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973).

The effect of *Belton* was to apply the rule of *Chimel v. California*, 395 U.S. 752,

89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which authorized police officers to search the area within the "immediate control" of the arrestee. *Id.*, 395 U.S. at 763, 89 S.Ct. at 2040. *Chimel* recognized that a valid arrest supported a search of the area within the "immediate control" of the arrestee for evidence and weapons without further justification. *Belton* applied the *Chimel* rule to automobile cases and defined the area within the "immediate control" of the arrestee as the passenger compartment of the automobile.

We have recognized the authority of police officers to search the passenger compartment of an automobile incident to the arrest of an occupant. This Court first applied the *Belton* rule in *State v. Calegar*, 104 Idaho 526, 661 P.2d 311 (1983). In *State v. Smith*, 120 Idaho 77, 813 P.2d 888 (1991), we stated that, pursuant to *Belton*, the police officers involved were "justified in searching the interior of the automobile, including any containers, as soon as the defendant was placed under arrest." *Id.*, 120 Idaho at 80, 813 P.2d at 891. Once having made a lawful custodial arrest of an occupant of an automobile, there is no need for further justification in order to search the passenger compartment of an automobile. In this case, the defendant does not contest the fact that Officer Graves made a lawful custodial arrest after which he searched the defendant's car. Therefore, we affirm the trial court's denial of the defendant's motion to suppress.

## II. THE STATE CONSTITUTIONAL THEORY WAS NOT PRESERVED FOR REVIEW

The defendant urges this Court to construe Idaho Const. art. I, § 17, to provide more protection than afforded by the Fourth Amendment of the United States Constitution. The defendant argues that the subsequent search must be causally related to the arrest. The defendant would have us adopt a rule that would require a belief on the part of the police officer conducting the search that the automobile contains either evidence *for which the defendant was arrested* or weapons.

In his motion to suppress, the defendant alleged that his "federal and state civil rights were violated" as required by "the federal and state constitutions and by state law." The defendant failed to further clarify his state constitutional argument. We cannot find in the record any reference to an argument seeking a greater scope of protection under the Idaho Constitution. This Court will not consider issues not raised in the court below. *In re Matter of Williams,* 120 Idaho 473, 817 P.2d 139 (1991); *State v. Martin,* 118 Idaho 334, 796 P.2d 1007 (1990); *State v. Kellogg,* 102 Idaho 628, 636 P.2d 750 (1981); *Lockard v. State,* 92 Idaho 813, 451 P.2d 1014 (1969). Therefore, we will not consider the defendant's argument.

Accordingly, we affirm the trial court's denial of the defendant's motion to suppress and affirm the conviction pursuant to the I.C.R. 11(a)(2) conditional plea of guilty.

BAKES, C.J., and JOHNSON and BOYLE, JJ., concur.

BISTLINE, Justice, specially concurring.

### I

Even though there is no disagreement on the Court that the search here was reasonable under the fourth amendment as interpreted in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), some guidance to the practicing bar is in order on the question of how to raise a state constitutional argument. The following comments are not intended to be an exhaustive review of the literature or to even to provide a hint on how the Court might eventually decide how to handle such cases. Rather, they are offered to stimulate thought and discussion on our state constitution and to offer some guidance to the bar on how one might fully develop an independent state constitutional claim.

### II

In 1986, the supreme court of Washington was faced with the same problem we encountered here: how to deal with an argument that the state constitution provided more protection against searches and seizures than the federal constitution. Instead of summarily dismissing the argument, that court set forth "six neutral non-exclusive criteria" relevant to determining whether in a given situation the state constitution should be interpreted independently from the federal constitution. Those criteria are set forth below along with the Washington court's comments:

*1. The textual language of the State Constitution.* The text of the state constitution may provide cogent grounds for a decision different from that which would be arrived at under the Federal Constitution. It may be more explicit or it may have no precise federal counterpart at all.

*2. Significant differences in the texts of parallel provisions of the federal and state constitutions.* Such differences may also warrant reliance on the state constitution. Even where parallel provisions of the two constitutions do not have meaningful differences, other relevant provisions of the state constitution may require that the state constitution be interpreted differently.

*3. State constitutional and common law history.* This may reflect an intention to confer greater protection from the state government than the federal constitution affords from the federal government. The history of the adoption of a particular state constitutional provision may reveal an intention that will support reading the provision independently of federal law.

*4. Preexisting state law.* Previously established bodies of state law, including statutory law, may also bear on the granting of distinctive state constitutional rights. State law may be responsive to concerns of its citizens long before they are addressed by analogous constitutional claims. Preexisting law can thus help to define the scope of a constitutional right later established.

*5. Differences in structure between the federal and state constitutions.* The former is a grant of enumerated powers to the federal government, and the latter serves to limit the sovereign

power which inheres directly in the people and indirectly in their elected representatives. Hence the explicit affirmation of fundamental rights in our state constitution may be seen as a guarantee of those rights rather than as a restriction on them.

*6. Matters of particular state interest or local concern.* Is the subject matter local in character, or does there appear to be a need for national uniformity? The former may be more appropriately addressed by resorting to the state constitution.

*State v. Gunwall,* 106 Wash.2d 54, 720 P.2d 808, 812–813 (1986).

The Washington court requires counsel to address the *Gunwall* factors whenever a state constitutional issue is raised. *State v. Wethered,* 110 Wash.2d 466, 755 P.2d 797, 801 (1988).

Other relevant areas of inquiry, not among the *Gunwall* factors, might be:[1]

*7. The interpretation of analogous state and federal provisions at the time of the adoption of the state constitution.* How similar language was interpreted at the time of the constitutional convention might indicate the intent of the framers.

*8. Interpretations of similar provisions in other state constitutions.* The experience of other state courts in interpreting similar provisions in their state constitutions may be of some guidance to this Court. This is especially true of those provisions which were adopted as our own at the constitutional convention.

*9. The history of the interpretation given to the analogous federal constitutional provision since the adoption of the state constitution.* Oftentimes the question of whether to independently interpret the state constitution will arise in case im-
mediately following the announcement of a new rule of constitutional law from the United States Supreme Court. It may be that this Court will decide to not follow federal precedent if the area of law is in a state of rapid change. We may instead prefer to develop our own rule of law which can be relied upon by the citizenry as well as the bench and bar of our state.

*10. The practical effects of the competing alternative rules.* When the United States Supreme Court overrules a prior federal precedent, there is no reason why the state constitutional interpretation must automatically follow the new federal rule. An examination of how the alternative rules will further the purpose of the state constitutional provision, and the effect each rule will have on those Idaho citizens affected by the United States Supreme Court's decision will aid this Court in deciding whether to adopt an independent state analysis.

State courts are free to examine federal constitutional law on its merits and decide whether to accept the change as our own, to continue to follow the prior rule or to adopt a new rule entirely (subject of course to the dictates of the fourteenth amendment). For example, several state supreme courts have refused to adopt the "totality of the circumstances" test for the sufficiency of a search warrant which was announced in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), because they preferred the older *"Aguilar–Spinelli"*[2] test which *Gates* overruled.[3] *See e.g. Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548, 556 (1985). There the Massachusetts Supreme Judicial Counsel rejected the totality of the circumstances test because it concluded that the two-pronged *Aguilar–Spinelli* test was more precise and therefore easier for the

---

**1.** Suggested criteria 7, 8 and 9 are taken from David Schuman, *Advocacy of State Constitutional Law Cases: A Report From the Provinces,* Emerging Issues in State Constitutional Law, Vol. 2 p. 275, 278–80 (1991).

**2.** *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

**3.** Cases addressing the merits of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) have been selected as examples so to not imply an opinion on any cases which might come before this Court. This Court decided to adopt the *Gates* standard in *State v. Lang,* 105 Idaho 683, 684, 672 P.2d 561, 562 (1983).

police in the field to apply. *See also State v. Jackson*, 102 Wash.2d 432, 688 P.2d 136, 141 (1984); *State v. Jones*, 706 P.2d 317, 321–24 (Alaska 1985) (rebutting the six propositions on which the United States Supreme Court justified its rejection of the *Aguilar–Spinelli* test); *State v. Griminger*, 71 N.Y.2d 635, 529 N.Y.S.2d 55, 57, 524 N.E.2d 409, 411 (1988) ("The *Aguilar–Spinelli* two-pronged inquiry has proven a satisfactory method of providing reasonable assurance that probable cause determinations are based on information derived from a credible source with firsthand information, and we are not convinced that the *Gates* test offers a satisfactory alternative."). The New Jersey Supreme Court blended the totality of the circumstances test with the *Aguilar–Spinelli* test to form its own test. *State v. Novembrino*, 105 N.J. 95, 519 A.2d 820, 836–37 (1987). As was once said, this Court need not be "a satellite in the eccentric orbiting of the High Court." *State v. Lang*, 105 Idaho 683, 691, 672 P.2d 561, 569 (1983) (Bistline, J. dissenting).

## III

It is hoped that this Court will someday see fit to provide some guidance to the bench and bar on how to address state constitutional claims. Until that day, the foregoing comments are offered up as a modest contribution towards the development of an independent state constitutional analysis.