838 P.2d 862

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mitchell Sherman GRIFFIN, Jr., A/K/A Mike Griffin, Defendant–Appellant.**

Nos. 17446 and 18218.

Supreme Court of Idaho,
Boise, March 1992 Term.

Aug. 27, 1992.

Joan M. Fisher, Genesee, for defendant-appellant.

Larry EchoHawk, Atty. Gen., and Michael J. Kane, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael J. Kane argued.

JOHNSON, Justice.

This is a criminal case. The appeal challenges the sentences imposed following guilty pleas to three counts of delivery of a controlled substance. The issues presented are whether the trial court abused its discretion and violated the defendant's rights to due process of law and equal protection of the law. We conclude that the trial court did not abuse its discretion nor violate the defendant's rights as to any of the issues presented, except as to the trial court's consideration of the defendant's refusal to reveal his drug sources. As to this issue, we remand the case to the trial court for reconsideration of the defendant's motion for reduction of the sentences in light of the defendant's assertion of fear for his life if he does reveal his drug sources. On remand, the trial court must determine the reasonableness of the defendant's fear.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

Mitchell Sherman Griffin, Jr. sold a quantity of cocaine to a confidential government informant in 1986 and sold quantities of methamphetamine to confidential government informants on two occasions in 1987. The state charged Griffin with three counts of delivery of a controlled substance. Griffin pleaded not guilty to these charges.

During the trial, Griffin took the witness stand in his own defense in an effort to prove that he had been entrapped by the confidential government informants into making the sales of drugs. During the state's cross-examination of Griffin, the prosecuting attorney asked Griffin: "You have customers right now that you're afraid to have their names released?" Griffin answered: "I feel just like—let's say an attorney, that these people are confidential—the things they do with me and the things I've done to them—with them are confidential and I cannot tell their names." Griffin also refused to say who his sources of cocaine were. The prosecuting attorney asked Griffin: "You've got a

source of cocaine that you're afraid to tell their name?" Griffin answered: "No, I don't." Griffin also refused to name who had furnished him with methamphetamine and marijuana or where he had seen "crack" being made.

When the prosecuting attorney asked Griffin whether the reason he would not identify the names of those from whom he obtained cocaine and methamphetamine and where he saw crack being made was that he was afraid of those people, Griffin answered: "I feel that I am the one that's on trial and there is—my sense of honor is no sense in bringing anybody else into it."

Shortly after this interrogation by the prosecuting attorney, Griffin's attorney requested a recess to consult with Griffin. Griffin then asked to change his pleas to guilty. The trial court accepted the pleas, ordered a presentence investigation, and set a date for sentencing.

After receiving the presentence investigation report, Griffin's attorney submitted a sentencing memorandum in which the attorney commented on the presentence report and requested a withheld judgment and probation for Griffin. In the sentencing memorandum, Griffin's attorney represented that Griffin denied that his drug dealing was nearly so involved as the presentence investigator indicated in the presentence report and stated that identification by Griffin of his sources "presents a danger to Mr. Griffin and would amount to a sentence of exile from his community."

At the sentencing hearing, the state presented evidence, over Griffin's objection, that cocaine delivered by Griffin in a drug transaction that was not charged in the three counts to which Griffin had pleaded guilty, was 100 percent pure. From this information, the state's witness drew the inference that Griffin was probably either "transporting cocaine into the country from its manufacturer" or that Griffin was "very close to the source of the supplier of cocaine into the country." Relying on this testimony and evidence presented at the trial indicating Griffin's prior drug activity, the state argued that Griffin was "a major drug dealer," and deserved incarceration

rather than probation or a suspended sentence.

After noting that the trial court normally placed first-time drug offenders on probation or gave them suspended sentences, the trial court explained that he was sentencing Griffin to imprisonment for the following reasons: (1) when Griffin testified at trial, he refused to answer questions about his drug sources and customers, indicating allegiance to them; (2) Griffin admitted that he was a multiple offender and a "habitual criminal," even though this was the first time Griffin had been caught; and (3) the trial court needed to send a message that it would not "treat relatively big time drug dealers with kid gloves." In commenting on the effect of Griffin's refusal to identify his sources and customers, the trial court commented that this was not "the overriding factor," was "not the reason why this defendant is going to go to prison," and was "one of the least important of the reasons" the trial court sentenced Griffin to prison.

In considering mitigating facts surrounding Griffin's crimes, the trial court found that despite the actions of the state's confidential informants, Griffin did not act under a strong provocation, but rather as a result of Griffin's "desire to make some money in drug dealing." The trial court also stated that Griffin's entrapment defense at trial would have failed because Griffin was predisposed to sell drugs.

The trial court sentenced Griffin to three concurrent terms of ten years each with five years of minimum confinement for each of the three counts. Later, the trial court resentenced Griffin for the charge of delivering cocaine, because the Unified Sentencing Act of 1986 (I.C. § 19–2513) that provides for the imposition of a period of minimum confinement did not apply to this charge. The trial court modified the sentence on the cocaine delivery charge to an indeterminate term of ten years, without requiring any minimum period of confinement.

Griffin moved for a further reduction of his sentences, contending that the sentences were: (1) unduly harsh and excessive, (2) illegal because they were based upon information on other unadjudicated offenses, and (3) an abuse of discretion. Griffin also requested that the trial court take judicial notice of the files and records in other specified drug cases in Latah County. Griffin asserted that his sentences violated his right to equal protection of the laws, because of the disparity between his sentences and the sentences in similar cases in the same court.

Griffin's attorney submitted a memorandum in support of the motion for reduction of sentence. Attached to the memorandum was a handwritten document prepared by Griffin in which he stated:

I feel that I was sentenced more stiffly than usual because I refused to reveal my drug sources and customers. I did not refuse to reveal my drug sources and customers because of allegiance, but because I felt that if I did reveal them, I would never be able to live in the community that I have grown up in and my entire family and friends live in without being in fear of my life. It would have alienated me from the people and country I love. I also believe that I should take responsibility for my actions and not try to get out of punishment by "snitching" on other people.

In support of his motion for further reduction of his sentences, Griffin presented evidence that the cocaine he had delivered in the uncharged cocaine transaction that was considered in the original sentencing contained only sixty-two percent cocaine, rather than 100 percent. Griffin's expert also testified that the delivery of 100 percent pure cocaine would not necessarily indicate that the person delivering it was an importation source.

The trial court denied further reduction of Griffin's sentences. In rejecting Griffin's argument that the trial court should not consider his refusal the trial court stated:

Although defendant urges that it would be illegal, or at least an abuse of discretion, for this Court, in imposing sentence, to give consideration to his refusal to reveal his sources of drug sup-

ply, the Idaho Supreme Court in *State v. Badgley*, 116 Idaho 236, 775 P.2d 128 (Sup.Ct. No. 17449, slip op. May 30, 1989) held that in imposing sentence the trial court may consider the failure of a defendant to identify others involved in the instant crime. There, defendant asserted that the furnishing of such information was impossible to perform as a condition of probation because of the danger to him of retribution. The Supreme Court concluded that "the imposition of the particular condition of probation by the trial court is not per se erroneous" and that "it is for the trial court to determine in the first instance whether the defendant's refusal to accept that condition of probation is reasonable or unreasonable under all the facts and circumstances."

Although the facts in *Badgley* are not on all fours with the facts in the case at bar, *Badgley* is instructive in the sense that it clearly recognizes that the question which must be resolved by trial court in considering the defendant's failure to implicate others by revealing his source of drug supply is whether such refusal was reasonable or unreasonable in light of the facts and circumstances of the instant case.

Here, the defendant has not asserted that his refusal to identify his sources is due to any fear on his part of retribution or reprisal by others. On the contrary, defendant has advanced no cogent reason for his refusal; and this Court may reasonably infer that such refusal is an expression of defendant's allegiance to those engaged in the illegal trafficking in drugs.

This most certainly is an indication that defendant is not repentant or remorseful about the instant offenses and that he would rather "take the rap" than violate his code of allegiance.

While rehabilitation of the defendant is one of the goals of sentencing recognized in *State v. Toohill*, 103 Idaho 565 [650 P.2d 707 (1982)], this Court is of the firm opinion that defendant's unreasonable refusal to name his sources, is demonstrative of one who is not a viable candidate for rehabilitation. If the defendant seeks help in rehabilitating his life style and allegiances he must demonstrate that he is prepared to take the first step by severing his allegiance to the drug culture.

In similar vein is *Roberts v. U.S.*, 445 U.S. 552, 100 S.Ct. 1358 [63 L.Ed.2d 622] (1980). There the defendant was asked "to expose the purveyors of heroin in his own community in exchange for a favorable disposition of his case." The Supreme Court opined:

> By declining to cooperate, petitioner rejected an "obligatio[n] of community life" that should be recognized before rehabilitation can begin. See Hart, The Aims of the Criminal Law, 23 Law & Contemp.Prob. 401, 437 (1958). Moreover, petitioner's refusal to cooperate protected his former partners in crime, thereby preserving his ability to resume criminal activities upon release. Few facts available to a sentencing judge are more relevant to " 'the likelihood that [a defendant] will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society.' "

The trial court concluded that in imposing sentence it was neither inappropriate nor improper to give consideration to Griffin's refusal to identify his source of drug supply.

The trial court also noted: "This Court is not unmindful of the fact that defendant has rebutted the state's evidence as to the quality of the cocaine taken from his possession or of the fact that he has received a favorable rehabilitative progress report."

The trial court rejected Griffin's argument that his sentences violated his equal protection rights and that the sentences were unduly harsh. The trial court reasoned that five year minimum sentences were appropriate because: (1) Griffin was a multiple offender, (2) Griffin had admitted prior drug involvement for several years before his arrest in this case, and (3) the sentences were well within the statutory

maximum of life imprisonment for these crimes.

The trial court also acknowledged that Griffin had rebutted the state's evidence as to the quality of the cocaine and that Griffin had received a favorable rehabilitative progress report. The trial court concluded, however, that these factors did not warrant a reduction of the sentences.

Griffin appealed.

## II.

**THE TRIAL COURT DID NOT ABUSE ITS DISCRETION AND VIOLATE GRIFFIN'S RIGHTS TO DUE PROCESS, CROSS–EXAMINATION, AND CONFRONTATION BY CONSIDERING THE PURITY OF COCAINE GRIFFIN DELIVERED IN AN UNCHARGED TRANSACTION AND OTHER UNCHARGED DRUG ACTIVITY.**

Griffin asserts that the trial court should not have considered false hearsay evidence concerning Griffin's uncharged delivery of 100 percent pure cocaine. Griffin contends that the trial court should not have relied on the testimony of the state's expert that the purity of the cocaine indicated that Griffin was either an importation source or close to an importation source of cocaine. Griffin contends that the trial court's consideration of this information violated his rights to due process, cross-examination, and confrontation. Griffin argues that the trial court's use of this information and information of other uncharged conduct in finding that Griffin was a "relatively big time drug dealer" and in making other findings concerning the degree of his illegal drug activity that were not supported by the record violated his right to due process. We disagree.

The primary authority Griffin cites in support of his position on these issues is *United States v. Safirstein*, 827 F.2d 1380 (9th Cir.1987). In *Safirstein*, the ninth circuit noted that the fifth amendment guarantee of due process "protects the defendant from consideration of improper or inaccurate information." As a corollary to this proposition, the court noted "that unfounded assumptions or groundless inferences although based upon proper and accurate information may not, consistent with due process, form the basis of sentence." *Id.* at 1385.

In this case, before resentencing Griffin on the cocaine delivery charge and before denying Griffin's motion to reduce his sentences, the trial court acknowledged that Griffin had rebutted the state's evidence as to the purity of the cocaine in the uncharged transaction. At the final resentencing hearing, the trial court struck from the presentence investigation report reference to the purity of the cocaine and stated:

I am mindful of the fact that during the earlier sentencing proceedings there was evidence that the quality of the cocaine taken from Mr. Griffin's possession was almost pure cocaine. That is, a type of cocaine which would indicate that he was close to an original source of supply. I am not giving consideration to that fact in light of the testimony elicited subsequently thereto ... in mitigation proceedings where it was testified by the defendant's expert that—essentially that the quality of cocaine was more close or was closer to street quality than to pure quality or there is indication from that he is not as close to the source as one might infer had I considered the fact that there was evidence that the cocaine was close to the source, that is, a more pure quality.

The presentence investigation report stated that Griffin "admitted to having dealt substantial quantities of marijuana, cocaine and amphetamines for a number of years." Recently, this Court upheld the use of admissions such as this made to presentence investigators, in the face of claims that the statements were hearsay or violated the defendant's right against self-incrimination. *State v. Pizzuto*, 119 Idaho 742, 759–60, 810 P.2d 680, 697–98 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), *overruled on other grounds, State v. Card,* 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1991); *State v. Paz,* 118 Idaho 542, 558, 798 P.2d 1, 17

(1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991), *overruled on other grounds, State v. Card,* 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1991).

Also, as the trial court noted in denying the motion for reduction of the sentences, this Court held in *State v. Ott,* 102 Idaho 169, 170, 627 P.2d 798, 799 (1981): "In arriving at its sentencing decision the court was within its authority in considering prior charges against [the defendant] which had been dismissed."

In addition, in denying Griffin's motion to reduce the sentences, the trial court focused on Griffin's sworn testimony as to prior uncharged drug offenses, rather than on this statement regarding cocaine purity. In his testimony at trial, before he changed his pleas to guilty, Griffin testified that from September 1984 to August 1985 he "had a pretty steady business of selling methamphetamine" in Latah County. Griffin testified that he sold approximately three and one-half grams of cocaine to one of the confidential government informants in October 1986, the month before the cocaine delivery charge in this case. He testified that at the time he made the delivery of cocaine charged in this case he also had marijuana in his possession that he may have offered to sell to one of the confidential government informants for $200 an ounce. He admitted that he had a shipment of cocaine in his house in the spring of 1987.

This is a dramatically different case than *Safirstein,* on which Griffin relies. In *Safirstein,* the ninth circuit vacated a sentence where the trial court had concluded that the defendant was involved in drug trafficking. In rejecting this basis for the trial court's sentence, the ninth circuit stated: "Here, there is not the barest scintilla of evidence that Safirstein was connected with narcotics." 827 F.2d at 1387. In this case, the trial court had sufficient evidence to support its findings concerning Griffin's prior uncharged drug activity.

We note that at the original sentencing hearing, Griffin's attorney acknowledged the scope of the trial court's authority to consider Griffin's uncharged drug activity:

[T]he Court certainly can take into consideration pending charges or uncharged—unproven. The only thing I would obviously caution the Court is that those be taken as they are. They are unproven and they are uncharged but certainly to the extent that Mr. Griffin has never denied a substantial relationship with drug activity. I'm not going to push that point beyond its validity.

We also reject Griffin's assertion that the trial court's consideration of the information concerning his prior uncharged drug activity violated his right of confrontation of witnesses against him. The primary information upon which the trial court relied was Griffin's own testimony at trial, not evidence provided by others.

### III.

### THE TRIAL COURT DID NOT DETERMINE THE REASONABLENESS OF GRIFFIN'S FEAR FOR HIS LIFE IF HE REVEALED HIS DRUG SOURCES.

 Griffin asserts that the trial court violated his right to due process and his right not to incriminate himself under both the United States Constitution and the Idaho Constitution by considering Griffin's refusal to reveal his sources in enhancing his sentence. We conclude that the trial court did not consider Griffin's assertion that he feared for his life if he revealed his drug sources. We remand the case to the trial court for reconsideration of the motion for reduction of sentences in light of this assertion. The trial court must determine the reasonableness of Griffin's fear.

We first note that Griffin did not include in his motions for reduction of sentence the issue of his fear for his life if he revealed his drug sources. In the absence of any other indication that Griffin presented this issue to the trial court or that the trial court ruled on the issue, we would ordinarily not consider the issue on appeal. *Sanchez v. Arave,* 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

The trial court's memorandum opinion concerning Griffin's final motion for reduc-

tion of sentence, however, refers specifically to Griffin having urged that "it would be illegal, or at least an abuse of discretion, for [the trial court], in imposing sentence, to give consideration to [Griffin's] refusal to reveal his sources of drug supply." The trial court then cited and discussed *State v. Badgley*, 116 Idaho 236, 775 P.2d 128 (1989). Immediately following the discussion of *Badgley* the trial court stated that Griffin had "not asserted that his refusal to identify his sources is due to any fear on his part of retribution or reprisal by others."

In *Manookian v. Blaine County*, 112 Idaho 697, 735 P.2d 1008 (1987), the Court considered an issue that had not been raised by the pleadings, but "was raised and considered below," and pointed out that "[t]he distinction must be made between an issue not formally raised below and an issue that was never raised below." *Id.* at 700, 735 P.2d at 1011; *see also Northcutt v. Sun Valley Co.*, 117 Idaho 351, 356–57, 787 P.2d 1159, 1164–65 (1990) (Although appellant did not present issue to trial court, issue would be addressed by the Court, where respondent presented issue to trial court, trial court ruled on the issue, appellant raised the issue on appeal, and issue was briefed and argued before the Court.)

Therefore, we will consider whether the trial court failed to determine the reasonableness of Griffin's fear for his life if he revealed his drug sources.

Griffin argues that the reasons he would not reveal his sources included fear for his safety and his right not to incriminate himself. As to Griffin's fear for his safety, Griffin points out that his attorney noted in her sentencing memorandum that "identification of his sources presents a danger to Mr. Griffin and would amount to a sentence of exile from his community." Griffin also points out that he expressed fear for his life if he revealed his sources when he authored a handwritten statement to the trial court that accompanied his attorney's memorandum in support of his motion for reduction of sentence.

In light of these references by Griffin and his attorney, we are troubled by the trial court's statement in denying the motion to reduce the sentences that Griffin had "not asserted his refusal to identify his sources is due to any fear on his part of retribution or reprisal by others." Perhaps the lapse of time from the original sentencing in March 1988 until the decision on the motion to reduce sentence in July 1989 may explain why the trial court did not remember the statement made by defense counsel in the sentencing memorandum. Even though this was not a direct statement by Griffin, it was certainly some indication that he asserted "danger" to himself, if not fear.

The trial court's failure to acknowledge the statement made by Griffin in the handwritten statement that accompanied his attorney's memorandum in support of the motion for reduction of sentence on January 30, 1989, is more puzzling. If the trial court had seen this statement, it was clearly erroneous for the court to state that Griffin had not asserted that his refusal was due to any fear on his part.

The memorandum of defense counsel, to which the handwritten statement of Griffin was attached, was augmented to the record on appeal after all the briefs had been submitted. The state did not object to this augmentation, nor did the state challenge the references by Griffin's attorney to Griffin's handwritten statement at the time of the argument before this Court. Therefore, we have no alternative but to conclude that the trial court had seen Griffin's handwritten statement, including his expression of fear for his life if he revealed his drug sources.

We can imagine that the trial court might have given more weight to Griffin's rationale for not revealing his drug sources that he gave during his testimony at trial than to the danger expressed in his attorney's sentencing memorandum. Perhaps the trial court also might have given more weight to Griffin's original trial testimony than to Griffin's handwritten statement in support of the motion to reduce his sentence in January 1989. The trial court had

the discretion to determine the weight, if any, to be given to Griffin's later assertion of fear in light of his prior testimony. The trial court did not address Griffin's assertion of fear, however. Instead, the trial court stated that Griffin had not asserted any fear of retribution or reprisal by others as a basis for his refusal.

Because the trial court did not address the significance of what had been presented to him concerning Griffin's fear, we find it necessary to remand the case for reconsideration of the denial of the motion for reduction of the sentences, giving the weight the trial court considers appropriate to the fear asserted by Griffin. The trial court correctly identified that our decision in *Badgley* "recognizes that the question which must be resolved by a trial court in considering the defendant's failure to implicate others by revealing his source of drug supply is whether such refusal was reasonable or unreasonable in light of the facts and circumstances of the instant case." On remand, the trial court must resolve this question in light of Griffin's expression of fear in his handwritten statement and other information in the record.

## IV.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO MITIGATE GRIFFIN'S SENTENCES BY CONSIDERING THE ACTIONS OF THE CONFIDENTIAL GOVERNMENT INFORMANTS.

■ Griffin asserts that the confidential informants in this case repeatedly called Griffin to get him to sell drugs and that he repeatedly told them he did not want anything to do with drug dealing. Griffin contends that the trial court should have considered these actions as a mitigating factor in sentencing him. We conclude that the trial court did not abuse its discretion in not giving Griffin a lesser sentence because of these alleged circumstances.

At the sentencing hearing the trial court rejected Griffin's contention that the informants provoked his deliveries:

In the defendant's sentencing memorandum he says his victim induced or facilitated the commission of the delivery to these informants. And since the victims were informants their conduct induced or facilitated the commission of the felony offenses of delivery of controlled substances. But having heard the testimony during the course of the trial, aborted trial—aborted when the defendant changed his pleas to guilty and having listened to the defendant's own testimony, this Court is satisfied that a defense of entrapment would not have been successful here. Because of his own testimony the defendant was, in this Court's opinion, predisposed to commit the crime of delivery of controlled substances. And thus it was not facilitated or induced, rather the State merely provided another buyer for the defendant to sell his contraband to.

This demonstrates that the trial court perceived that it had discretion to consider the actions of the informants as mitigation, acted within the outer boundaries of that discretion, and reached its decision by an exercise of reason. Therefore, the trial court did not abuse its discretion. *State v. Brown,* 121 Idaho 385, 389, 825 P.2d 482, 486 (1992).

## V.

### THE TRIAL COURT DID NOT VIOLATE GRIFFIN'S RIGHT TO EQUAL PROTECTION OF THE LAWS BY IMPOSING HARSHER SENTENCES ON GRIFFIN THAN THOSE IMPOSED ON OTHER DEFENDANTS IN SIMILAR DRUG CASES.

■ Griffin asserts that the trial court imposed either probation or suspended sentences on the vast majority of first-time drug offenders in Latah County. To support this assertion Griffin presents records of other drug cases that have come before this trial court. We do not accept, however, Griffin's further assertion that the disparity between his sentences and those of other drug offenders in Latah County amounts to a violation of equal protection of the laws.

In rejecting Griffin's equal protection argument on denial of the motion for reduction of the sentences, the trial court said:

The defendant has failed to show that the differences between his sentences and the sentences alluded to by him are arbitrary or based on improper considerations, and thus defendant has failed to demonstrate he has been deprived of his constitutional right to equal protection of the law.

We agree.

In *State v. Seifart*, 100 Idaho 321, 597 P.2d 44 (1979), we rejected a challenge to the disparity of the sentence given to one of two co-defendants. In *Seifart*, we quoted from *United States v. Vita*, 209 F.Supp. 172 (E.D.N.Y.1962):

"There is no requirement under the due process clause or any other clause of the Constitution which imposes a mandate upon the Court to render uniform sentences against criminal defendants."

100 Idaho at 324, 597 P.2d at 47.

## VI.

### THE SENTENCES ARE NOT UNREASONABLY HARSH AND EXCESSIVE.

Griffin asserts that the sentences were unreasonably harsh and excessive. We disagree.

Recently, we have restated the standards for determining whether a sentence is reasonable. *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992); *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991). Applying those standards, we conclude that the sentences the trial court imposed on Griffin were not unreasonable.

Under *Broadhead*, we use the fixed or minimum period of confinement portion of the combined sentences as the term of confinement for purposes of appellate review. 120 Idaho at 146, 814 P.2d at 406. In this case, this means five years.

We next must determine whether considering (1) the protection of society, (2) deterrence of Griffin and others, (3) the possibility of Griffin's rehabilitation, and (4) punishment or retribution for Griffin, the sentence was excessive under any reasonable view of the facts. We will not substitute our view for that of the trial court where reasonable minds might differ. *Id.* at 145, 814 P.2d at 405.

In the trial court's comments in the original sentencing hearing and in the resentencing for the cocaine delivery, as well as in the trial court's decision denying the motion for reduction of the sentences, the trial court focused on deterrence to Griffin and others and on not depreciating the seriousness of Griffin's offenses. We conclude that reasonable minds might differ as to whether five years, or some lesser fixed term, is necessary to deter Griffin and others. Therefore, we conclude that the sentences were not unreasonable.

## VII.

### CONCLUSION.

We affirm the sentences in this case as to all of the issues Griffin has raised on appeal, except the trial court's consideration of Griffin's refusal to reveal his drug sources. As to this issue, we remand the case to the trial court for reconsideration of the motion for reduction of the sentences in light of Griffin's assertion that if he revealed his sources he would be in fear of his life. On remand, the trial court must determine the reasonableness of Griffin's fear, in light of Griffin's statement and the other information in the record.

BISTLINE and McDEVITT, JJ., and WINMILL, J., pro tem. concur.

BAKES, Chief Justice, concurring as to Parts I, II, IV, V and VI; and dissenting as to Part III:

In Part III the majority, relying upon our case of *State v. Badgley*, 116 Idaho 236, 775 P.2d 128 (1989), concludes that the trial court may have improperly sentenced Griffin because he refused to disclose his sources when the reason he refused to disclose them was out of fear, and therefore the trial judge erred in not considering the reasonableness of Griffin's claim of fear. However, that issue has not been

preserved since none of Griffin's several Rule 35 motions ever mentioned that as an issue in the case. Therefore, under our recent decision in *State v. Martin*, 119 Idaho 577, 808 P.2d 1322 (1991), that issue is not properly before us.

This case had a long history in the trial court. Griffin was charged with three counts of Delivery of a Controlled Substance. He went to trial in November of 1987, and the trial ended when Griffin, after testifying at length, changed his plea to guilty on all three counts and the matter was continued for sentencing. After a presentence investigation report was obtained, Griffin was sentenced on March 11, 1988, to ten years on each count with a minimum period of confinement of five years, each count to run concurrently. Griffin filed a notice of appeal from that judgement and sentence on March 29, 1988.

Subsequently, on July 1, 1988, while the direct appeal was pending, Griffin filed the first of a series of I.C.R. 35 motions for reduction of sentence.[1] Thereafter, on August 29, 1988, Griffin filed another Rule 35 request for reduction. On September 12, 1988, Griffin filed still another amended motion for reduction under Rule 35. The trial court ordered a hearing on these three motions which was delayed because of discovery and other matters. The Rule 35 motions were finally set for hearing on January 30, 1989, on which day Griffin's attorney filed yet another motion to amend the Rule 35 motion for reduction of sentence, along with a memorandum brief in support of that amended motion for sentence reduction.

None of the Rule 35 motions or amended motions, nor the memorandum brief, raises as an issue the claim that the trial court erroneously considered Griffin's failure to disclose his sources when imposing the sentence nine months earlier, consequently, it is understandable that the trial court failed to address the reasonableness of Griffin's claim of fear. That was not an issue raised in any of the Rule 35 motions or the brief in support of the motions and therefore it is waived.[2] *State v. Martin*, 119 Idaho 577, 808 P.2d 1322 (1991).

The majority asserts that the fear issue was raised based upon references to two documents which were augmented into the record. The first is Griffin's original sentencing memorandum filed on March 2, 1988, nine days prior to the imposition of the original sentence on March 11, 1988, and three months before the first Rule 35 motion for reduction was filed on July 1, 1988. In that sentencing memorandum, Griffin's counsel stated:

> Mr. Griffin's biggest connections were with the confidential informants, Jeff Clark and Mike Whiting, until they were busted. Mr. Griffin further wishes to advise the court that his refusal to identify his drug sources is not because he has "chosen to remain protective and loyal to his drug 'associates' " as asserted by the Presentence Investigator but rather is a product of his upbringing to accept responsibility for your own actions but not to "snitch" on others. Secondly, identifi-

---

1. On July 29, 1988, the trial court, *sua sponte*, entered an order correcting, *nunc pro tunc*, its sentence in Count I, which the trial court felt had been illegally imposed.

2. The memorandum brief filed by Griffin's counsel on January 30, 1989, the day the Rule 35 motions were heard, states the issues to be as follows:
 1. Whether or not the amendment of the Judgement of Conviction in Defendant's absence was imposed in an illegal manner and compels re-sentencing in this case?
 2. Whether the sentence imposed was illegally based on hearsay information of unadjudicated other offenses depriving the defendant of his constitutional right to confrontation and cross-examination?

3. Whether the sentence imposed was unduly harsh and excessive at the time it was imposed?
4. Whether the sentence imposed was unduly harsh and excessive under the facts and circumstances now existing?
5. Whether the sentence of defendant as compared with the sentences of other persons similarly convicted and sentenced by the trial court was so different in treatment and in kind as to have violated defendant's right to Equal Protection as guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, Section 1 of the Idaho Constitution?

cation of his sources presents a danger to Mr. Griffin and would amount to a sentence of exile from his community. Whatever his sentence, Mr. Griffin wishes and plans to return to this area to live and if he were to "snitch" he would be unable to do so.

The other reference cited by the majority is to a handwritten, unsworn letter by Griffin which his counsel attached to his January 30, 1989 memorandum brief filed in support of the Rule 35 motions for reduction of sentence which were all heard on January 30, 1989. In that handwritten letter, Griffin stated:

I feel that I was sentenced more stiffly than usual because I refused to reveal my drug sources and customers. I did not refuse to reveal my drug sources and customers because of allegiance, but because I felt that if I did reveal them, I would never be able to live in the community that I have grown up in and my entire family and friends live in without being in fear of my life. It would have alienated me from the people and country that I love. I also believe that I should take responsibility for my actions and not try to get out of punishment by "snitching" on other people.... My biggest suppliers were in fact Jeff Clark and Mike Whiting who I testified to being my connections from 1984 to 1985. The people I received the drugs from,

that I delivered to [Mike] Whiting and [Jeff] Clark are not big main suppliers.

However, nothing raised in any of the Rule 35 pleadings, and nothing raised in the memorandum brief in support of the motion for reduction filed on January 30, 1989, raises fear as an issue. Merely attaching an unsworn handwritten letter to the January 30, 1989, memorandum brief does not amend the Rule 35 pleadings or alter the issues which the brief specifically identifies. Under *State v. Martin* we should not consider it. The unsworn, undated letter attached to his counsel's brief is not any basis for this Court to now conclude that the defendant has raised an issue that he was more severely sentenced because he refused to disclose his sources which he feared.

The defendant has raised, in his direct appeal from the March 11, 1988, sentence, the issue that the trial court erred in considering the defendant's refusal to reveal his drug sources "where the defendant advised the court that his refusal was based on his fear of recrimination and reprisal." As to that, there is nothing in the evidence or in the record on appeal, except the defendant's counsel's sentencing memorandum filed on March 2, 1988, to support that claim. However, the defendant's testimony at trial, upon which the trial court based its original sentencing decision, did not raise the issue of fear.[3] There is no evi-

---

3. At trial, the defendant testified on direct examination that he was indeed afraid of his two main suppliers, Mike Whiting and Jeff Clark; that his fear of them arose from conversations and statements made by Clark and Whiting. He testified that he told Clark and Whiting that he no longer wanted to be involved, and that if he said no he was scared of what could be the recourse from Clark and Whiting. The fear which the defendant testified that he had of Jeff Clark and Mike Whiting was not of his disclosure of them, because they had become state's informants and were the persons to whom Griffin had sold the drugs which resulted in the three charges involved in this appeal. The fear about which he testified was an earlier fear of refusing to deal with them, not fear of their disclosure to the authorities, because by the time of the transaction involved in these charges Clark and Whiting were already working for the police. Their names were testified to openly at the trial and disclosed in the original sentencing memorandum.

It was the persons who supplied Griffin with the drugs which he sold to Jeff Clark and Mike Whiting that he refused to disclose, not out of fear, but out of loyalty. As to those suppliers, Griffin testified at his trial:

Q. You have customers right now that you're afraid to have their names released.

A [t]hese people are confidential ... and I cannot tell you their names.

Q. You've got a source of cocaine that you're afraid to tell their name?

A. No I don't.

Q. And that wasn't because you were afraid in dealing control substances that he might be a law enforcement officer?

A. I was afraid the trouble that he'd ( [Jeff] Clark) been in and like I stated it previously on my business, I was afraid of losing my business and the fear in me and the distrust in them at the time I felt I had to ask them.

Q. Is that why you won't release any of these names to the ladies and gentlemen of the jury

**744**

dence in the record before the Court in Case No. 17446, the direct appeal from the judgment of conviction and sentence, which supports the claim in defense counsel's sentencing memorandum that the defendant was in danger of being exiled from his community.

Accordingly, we should affirm the direct appeal on the ground that there is no evidence in the record in Case No. 17446, the direct appeal, to support the statement of defense counsel in the March 2, 1988, sentencing memorandum that the defendant refused to disclose his sources out of fear. As a matter of fact, that very same sentencing memorandum specifically identifies Clark and Whiting, the two primary sources, negating any thought that the defendant was claiming fear at that time.

We should also affirm the appeal from the Court's order denying the Rule 35 motions because the issue of fear was never raised in those motions or in the January 30, 1989, memorandum brief filed in support of those motions.

that we've asked about—about where you got cocaine, where you got methamphetamine, where you saw crack being made, is that you're afraid of those people?

A. I feel that I am the one that's on trial and there is—my sense of honor is no sense in bringing anybody else into it. Tr.Vol. 1, p. 159–169.