855 P.2d 863

STATE of Idaho, Plaintiff–Respondent,

v.

Joseph Lewis FOLLINUS, aka Lewis
Joseph Follinus, Defendant–
Appellant.

STATE of Idaho, Plaintiff–Respondent,

v.

Patricia HOWE, aka Follinus,
Defendant–Appellant.

Nos. 19441, 19839.

Supreme Court of Idaho,
Boise, March 1993 Term.

June 30, 1993.

Van G. Bishop, Nampa, for appellants.

Larry EchoHawk, Atty. Gen., Thomas P.
Watkins, Deputy Atty. Gen., Boise, for re-
spondent. Thomas P. Watkins argued.

JOHNSON, Justice.

This is a drug case. The primary issue presented is whether the trial court improperly refused to suppress evidence seized during the search of a residence pursuant to a search warrant after the occupants of the residence were arrested and the residence secured. We conclude that the trial court correctly denied the motions to suppress, although we apply the independent source doctrine, rather than the inevitable discovery doctrine upon which the trial court relied.

We decline to address a challenge to the use of evidence obtained through a telephone conversation that was allegedly recorded in violation of Washington law, because there was no objection to the admission of evidence and because the use of the evidence would not be fundamental error, if it were error. We reject the claim that the district judge denied Follinus due process of law by leading Follinus to believe the judge had not heard a disparaging remark Follinus made and depriving Follinus of the opportunity to request the judge to disqualify himself. We conclude that Follinus's sentence is not unreasonable.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Joseph Follinus and Patricia Howe, common-law spouses, were the subjects of an investigation by state and federal drug enforcement officers. The officers initiated the investigation after an informant contacted federal drug enforcement officers in the state of Washington and told them of Follinus's attempt to purchase a large amount of ephedrine, a precursor drug used in the production of methamphetamine. Under the supervision of federal officers, the informant made telephone calls from Washington to Follinus in Idaho to arrange the purchase of ephedrine. The phone calls were recorded by a federal officer in Washington with the consent of the informant.

Later, the informant and a federal officer met Follinus in Idaho and delivered ephedrine to Follinus. Follinus invited the informant and the officer to his nearby residence. Once inside, Follinus and Howe discussed details of their methamphetamine manufacturing process and showed the officer substances and equipment used in the process.

After leaving the residence, the federal officer, the informant, and one other officer went to obtain a search warrant from a magistrate judge. Other officers remained at the scene and maintained surveillance of the residence. Follinus left the residence and drove to a nearby gas station. The officers who were surveilling the residence followed Follinus and arrested him. The officers handcuffed Follinus, placed him in the back of a police car, and took him to the residence. The officers who transported Follinus testified that Follinus consented to a search of the residence.

Upon returning to the residence, the officers informed Howe, who remained inside the residence, that Follinus had consented to a search. Howe refused to admit the officers without a warrant. The officers forcibly entered the residence, subdued and arrested Howe, and made a protective sweep of the premises. The officers remained inside the residence until the other officers returned with the search warrant. Pursuant to the warrant, the officers searched the residence and seized incriminating evidence.

Follinus and Howe were charged separately with various drug offenses. Follinus and Howe each filed motions to suppress the evidence seized from the residence. Follinus proceeded with a suppression hearing on his motion. Howe, by stipulation, agreed to adopt the record, transcript, and rulings in Follinus's case.

The trial court denied Follinus's motion to suppress, ruling that suppression was not required because any evidence obtained before the search warrant arrived would inevitably have been discovered under the search warrant.

Howe entered an *Alford* plea on the charge of possession of ephedrine with intent to manufacture methamphetamine. *See North Carolina v. Alford,* 400 U.S. 25,

91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The state dismissed the other charges against Howe. Howe conditioned her plea on her right to appeal from the order denying suppression.

Follinus went to trial and was convicted by a jury. The trial judge sentenced Follinus to a minimum period of confinement of seven years and a subsequent indeterminate period of confinement not to exceed thirteen years on each of three charges, with the sentences to run concurrently. Follinus appealed the denial of his motion to suppress, his conviction, the sentence, and the trial court's summary denial of a motion for reduction of sentence. Howe appealed the denial of her motion to suppress. The appeals were consolidated.

## II.

### THE SEARCH AND SEIZURE DOES NOT REQUIRE SUPPRESSION.

■ Follinus and Howe assert that the evidence seized from the residence must be suppressed, because the police officers' warrantless entry into the residence before the search warrant was issued constituted an illegal search and seizure of all of the evidence contained in the house. We disagree.

■ Even if the warrantless entry violated the Fourth Amendment, as Howe and Follinus argue, suppression is not necessary because an independently procured search warrant provided an independent source for the evidence seized from the residence. A wholly independent search warrant, procured without reference to information obtained through an illegal warrantless entry, constitutes an independent source for seizure of the evidence sufficient to purge any taint on the evidence from a prior illegal entry and can serve as a basis for denying suppression of evidence obtained by illegal police conduct. *Murray v. U.S.*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); *Segura v. U.S.*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

This Court recognized the independent source doctrine in *State v. Hoak*, 107 Idaho 742, 692 P.2d 1174 (1984). In *Hoak*, the police made a warrantless entry into a home to arrest the defendants. Two police officers remained on the premises while the third brought the defendants to jail and went to the magistrate judge to obtain a search warrant. The third officer then returned to the residence with the warrant and initiated a search of the residence. The Court held that the warrant was an independent source derived solely from information prior to and independent of the illegal arrest and dissipated any taint on the evidence resulting from the prior illegal entry. *Id.* at 750, 692 P.2d at 1182.

Virtually the same circumstances exist in this case. The only difference is that the officers in this case had already left the residence to secure the warrant before the illegal entry occurred. Follinus and Howe concede that the police did not use any information gained by the illegal entry in procuring the search warrant. Follinus and Howe argue, however, that the independent source doctrine does not apply because the police entered the residence and detained Howe inside the residence. This argument is unpersuasive.

The officers had probable cause to arrest Howe based on the information obtained before the entry. The officers who entered the residence testified that Howe was arrested immediately upon entering the apartment. This is not disputed by Howe. Therefore, there is no basis for Howe's argument that she was illegally detained inside the residence.

While we do not condone the officer's warrantless entry into the residence, the circumstances of the case and our prior decisions establish that pursuant to the independent source doctrine, the trial court correctly refused to suppress the evidence seized pursuant to the search warrant.

## III.

### USE OF TELEPHONE CONVERSATIONS RECORDED IN VIOLATION OF WASHINGTON STATE LAW WOULD NOT BE FUNDAMENTAL ERROR, IF IT WERE ERROR.

■ Follinus and Howe assert that the trial court should have excluded all evi-

dence associated with the recording of telephone conversations in Washington including the use of the tape recordings and the testimony of the informant who participated in the conversations. They also assert that the trial court should have suppressed the evidence seized in the residence because it was the fruit of the poisonous tree of these recorded conversations. We decline the invitation to address these questions. The issue was not preserved for appeal and the use of this evidence in violation of the Washington law would not be fundamental error, if it were error.

It is illegal under Washington law for persons to record telephone conversations without the consent of all parties to the communication. Wash.Rev.Code § 9.73.-030. Washington law requires Washington courts in criminal trials to suppress all evidence obtained in violation of this law. Wash.Rev.Code § 9.73.050. Follinus and Howe assert that violation of the Washington statute requires suppression of the same evidence in a criminal trial in this state. Follinus also alleges that the trial court should not have admitted the tapes and testimony regarding the conversations as evidence in his trial.

Follinus and Howe admit that they did not challenge the use of the tape recorded telephone conversations and the informant's testimony in the trial court. The trial court did not consider or rule on these issues. Therefore, we will not consider these issues on appeal. *See State v. Griffin*, 122 Idaho 733, 738–39, 838 P.2d 862, 867–868 (1992).

█ Follinus and Howe assert that although these issues were not preserved for appeal, we should address the issues under the fundamental error rule. The Ninth Circuit has held that violation of the Washington wiretap statute is not a constitutional violation, does not require exclusion of evidence in a federal trial, and provides only statutory remedies. *U.S. v. Keen*, 508 F.2d 986 (9th Cir.1974). We agree with the reasoning in *Keen*. If there were error concerning the use of the recorded telephone conversations, the error did not go to the foundation or basis of the defendants'

rights and, therefore, would not be fundamental error. *State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992).

## IV.

## THE DISTRICT JUDGE DID NOT VIOLATE FOLLINUS'S RIGHT TO DUE PROCESS OF LAW.

Follinus asserts that the district judge violated his right to due process of law, because the judge heard a disparaging remark Follinus made concerning the judge during Follinus's initial arraignment and later mislead Follinus into believing the district judge did not hear the remark. Follinus contends this deprived him of an opportunity to move to disqualify the judge. We disagree.

Follinus's argument is based on the following comments by the district judge. On the first day of trial, the following dialogue took place:

> FOLLINUS: One other thing before the jury comes in, back in February, I was—had a real, real serious sinus infection and virus that was going through the jail. And I want to apologize to the Court now for a comment that I made.
>
> THE COURT: I didn't hear your comment.
>
> FOLLINUS: I'm glad you didn't but I want to apologize to you and the Court and to Mr. Wolff also at this time.
>
> THE COURT: No apologies needed, Mr. Follinus.

At the sentencing hearing, the trial judge stated:

> Mr. Follinus, first let me say one thing, and I know you're concerned about it. And at one point you were belligerent in the courtroom, and I want you to know that didn't bother me at the time. I wondered why, but I'm satisfied that you were upset by the search, so it has nothing to do with my sentencing.

Follinus argues that these statements show that the comment was made and that the district judge heard the remark. The district judge's statement at the sentencing

hearing, however, refers to "belligerent conduct," not an offensive statement. The judge's statement does not support Follinus's assertion that the judge heard the remark by Follinus at the arraignment proceeding.

## V.

### FOLLINUS'S SENTENCE IS NOT UNREASONABLE.

■ Follinus asserts that his sentence is unreasonable because the trial court abused its discretion in sentencing Follinus. We disagree.

Under *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991), we use the fixed or minimum period of confinement portion of the combined sentences as the term of confinement for purposes of appellate review. *Id.* at 146, 814 P.2d at 406. In this case, the minimum period of confinement is seven years.

We next must determine whether considering: (1) the protection of society, (2) deterrence of Follinus and others, (3) the possibility of Follinus's rehabilitation, and (4) punishment or retribution for Follinus, the sentence was excessive under any reasonable view of the facts. We will not substitute our view for that of the trial court where reasonable minds might differ. *Id.* at 145, 814 P.2d at 405.

We note that the trial court did not specifically state which of the objectives of sentencing it was considering in fashioning Follinus's sentence. This is not a basis for overturning the sentence. In *State v. Nield*, 106 Idaho 665, 666, 682 P.2d 618, 619 (1984), the Court reiterated, " 'that while the setting forth of reasons for the imposition of a particular sentence would be helpful and is encouraged, it is not mandatory.' " (quoting *State v. Osborn*, 104 Idaho 809, 810, 663 P.2d 1111, 1112 (1983)).

The trial court stated that it based Follinus's sentence on Follinus's past history, and on the fact it was convinced Follinus would continue his criminal activities even though Follinus was capable of "going straight." The trial court also indicated that it did not believe Follinus, given his health, could pursue his previous occupation as a carpet layer. While we would have preferred a more specific statement of the reasons for the sentence, we conclude that reasonable minds might differ whether seven years, or some lesser fixed term, is necessary to fulfill the objectives of sentencing. Therefore, we conclude that Follinus's sentence is not unreasonable.

## VI.

### CONCLUSION.

We affirm the convictions of Follinus and Howe and Follinus's sentence.

McDEVITT, C.J., TROUT, J., and McDERMOTT, J., Pro Tem, concur.

BISTLINE, Justice, specially concurring.

This criminal cause has brought me to course over the dissenting opinion in *State v. Hoak*, 107 Idaho 742, 750–67, 692 P.2d 1174, 1182–89 (1984), which carefully and thoroughly detailed the constitutional fault and factual inapplicability of the so-called independent source doctrine, *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). In *Hoak*, one lonely voice in the wilderness reminded the majority that this Court has an obligation to uphold the *independent* provisions of our Idaho Constitution, see Justice Herman Taylor's opinion in *State v. Arregui*, 44 Idaho 43, 254 P. 788 (1927), especially in cases where the United States Supreme Court has cut back on the protection afforded by an analogous federal constitutional provision. The majority in *Hoak* did not deem it appropriate to consider the state constitutional implications of the independent source doctrine, instead deciding the case on Fourth Amendment grounds only. Thus, to this day, the question of whether the independent source doctrine is ingrained in Idaho constitutional jurisprudence has yet to be decided.

It is clear that the Idaho Constitution in some instances confers broader protections against unreasonable searches and seizures than does the Fourth Amendment as is evidenced by the Court's well-received re-

cent opinion in *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992) (rejecting a good faith exception to the exclusionary rule under Article 1, § 17), and the cases cited therein. It is also clear that a party must sufficiently raise and argue the state constitutional issue before we will address it. *State v. Wheaton*, 121 Idaho 404, 406–07, 825 P.2d 501, 503–04, (1992) (refusing to address issue of whether the rule in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), should be rejected under Idaho Const. art. 1, § 17). Accordingly, this Justice agrees with the majority that to date there is no occasion to visit the state constitutional issue.

An exceptionally astute practitioner running across this case or *Hoak* might consider whether the independent source doctrine is therefore open to a properly raised challenge on state constitutional grounds. That dedicated practitioner might then ponder the question of whether the rationale of the independent source doctrine, which is really just another exception to the federal exclusionary rule, was and is consonant with the independent purposes of the Idaho exclusionary rule as set forth in the *Guzman* case. Finally, that practitioner might then look to the *Wheaton* case for some "some guidance ... on how one might fully develop an independent state constitutional claim." *Wheaton*, 121 Idaho at 407, 825 P.2d at 504 (Bistline, J., specially concurring). The above cases, along with Justice Stevens's dissent in *Segura v. United States*, 468 U.S. at 817–40, 104 S.Ct. at 3391–3405, and Professor LaFave's commentary on *Segura* in his treatise, 4 W. LaFave, *Search and Seizure*, § 11.4(f) (2d ed. 1987), are recommended reading for the practitioner who is dedicated to the nourishing of an independent body of law in Idaho.

However, because only a federal constitutional issue is raised as to the patently illegal search and seizure, presently I am constrained to concur with the majority's conclusion that there is no remedy for the appellants under the Fourth Amendment.